## CABLE v. COMMERCIAL & SAVINGS BANK OF WINCHESTER, VA.

### No. 15.

District Court, W. D. Virginia, at Harrisonburg.

Feb. 27, 1940.

O. B. Fisher, of Paris, Tex., and Harry R. Kern, of Winchester, Va., for plaintiff.

F. S. Tavenner, of Woodstock, Va., H. S. Larrick, of Winchester, Va., for defendant.

PAUL, District Judge.

This action was instituted on April 20, 1939, and the complaint filed alleged in substance the following: That the American National Bank of Paris, Texas, went into liquidation in March, 1931, and that the Comptroller of the Currency, on April 10, 1931, made an assessment of 100% upon the stockholders of the bank, to be paid on or before May 18, 1931. That one Rose Lee Burton Snyder, who had died in 1927, was at the time of her death the owner of 50 shares of the stock of the bank of the par value of $100 per share and that upon her death she had bequeathed her estate, including this stock as well as other securities, to the Commercial and Savings Bank of Winchester, Virginia, to be held by it in trust for Minnie E. Burton and Genevieve Burton, beneficiaries named in her will. That at the time of the insolvency of the Texas bank and the subsequent assessment on the stockholders, the fifty shares of stock were held by the de-

fendant bank as executor and trustee under the conditions named. That the defendant, at the time of the assessment, had sufficient property belonging to the trust fund with which to pay the assessment and was liable therefor. The complaint further briefly states that "demand has been made upon defendant for payment of such assessment, and payment has been refused".

The defendant answered, setting up various defenses, several of which went to questions of jurisdiction, but which included also a plea of the statute of limitations. On October 23, 1939, when the case was about to be tried, the plaintiff asked leave and, over the objection of defendant, was permitted to file an amended complaint. This amendment was designed to meet the defense of limitations and, for an explanation of the failure to sue earlier, alleges that when demand was made for payment of the assessment in May, 1931, the defendant bank falsely represented to the then receiver of the Texas bank that the trust estate was without any assets and that such representations were made for the purpose of deceiving the receiver and inducing him not to institute suit; that the receiver relied on such representations and refrained from suing upon what he had been induced to believe was a worthless claim, until in December, 1938, it was discovered by the then receiver (a successor to the original receiver) that the trust estate was and had always been of substantial value and in excess of the assessment. That upon acquiring this information this action was instituted, and that the defendant by its action is estopped from pleading the statute of limitations.

To the amended complaint, the defendant filed its motion to strike and answered, taking issue upon the allegations of fraud and deceit on its part and adopting also its defenses to the original complaint. No demand for a jury was made and the action has been tried before the Court. I am of opinion that none of the defenses questioning either the general jurisdiction of this Court or the propriety of the action in this form have merit. The only substantial defense is that of limitations.

On this question, the facts are comparatively simple and the issue is within narrow limits. The allegations of the bill as to the death of Mrs. Snyder, her ownership of the fifty shares of stock and that the defendant bank has, since her death, held the stock, together with other securities, as trustee, are not denied. It is likewise conceded that the assessment was made; that the defendant bank was duly notified of it and that, at that time, and probably continually since, the assets of the trust estate amounted to a substantial sum and were in excess of the amount ($5,000) assessed against the stock.

In the case of Bond, Receiver, v. Williamson[1] (September, 1937), this Court held that the liability of a stockholder in a national bank was a statutory one and not contractual. McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann. Cas. 500. That the right of action on an assessment on such stock was not one as to which the Virginia law had fixed a specific period of limitation and that, therefore, it was governed by the Sect. 5818 of the Virginia Code, providing that "Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued * * *". See Pyles v. Carney, 85 W.Va. 159, 101 S. E. 174; Hall, Rec. v. Ballard, 4 Cir., 90 F.2d 939. The discussion in that case need not be repeated here.

This action was not instituted until more than five years after the Comptroller made the assessment and after the defendant was notified of it. It is obvious, therefore, that the plaintiff is barred from recovering unless the defendant is estopped to plead limitations, and this is the only subject of inquiry.

From the testimony of John I. Sloat, cashier and trust officer of the defendant bank, it appears that in April, 1931, his bank received a copy of the formal assessment made by the Comptroller. This was accompanied by a notice signed by C. L. Killingsworth, Receiver, calling attention to the assessment on the fifty shares of stock. The notice was addressed to "Mrs. Rose Lee Snyder Estate, care of John I. Sloat, Com. & Savings Bank, Winchester, Va." Mr. Sloat testifies that so far as he remembers his only reply to this notice was to acknowledge its receipt.

On May 1, 1933, Killingsworth, Receiver, addressed a letter to Mr. John I. Sloat at the Commercial and Savings Bank, Winchester, in which he stated that he understood that he was legal representa-

---

[1] No opinion for publication.

tive of the estate of Mrs. Snyder, called attention to the indebtedness of $5,000, based on the stock assessment and requested immediate payment. He further requested that, in case the estate was unable to pay at that time, the defendant execute a waiver of limitation and furnish a statement of the financial condition of the estate, the names of the beneficiaries, etc. There was enclosed a form of waiver acknowledging the indebtedness and waiving all rights under any statute of limitations. This communication, sent by registered mail, was received, and on May 5, 1933, was answered by Mr. Sloat in a brief letter, the entire body of which was as follows: "We have your favor of the 1st inst., and in reply beg to add that the Misses Burton have no money with which to pay the 100% assessment on account of the stock in the American National Bank."

The waiver was not executed and the form therefor was not returned. The Misses Burton referred to were the beneficiaries of the estate. So far as proven no communications other than the above passed between the receiver of the Texas bank and the defendant prior to institution of this action.

Mr. Killingsworth testifies that when he received the letter of May 5, 1933, he considered it to mean that the estate had no assets and that he accordingly marked his records to indicate that this assessment was worthless and he did not sue upon it as he did not feel justified in going to the expense of obtaining a worthless judgment. At this time no inquiry was made of any other person as to the condition of the trust estate, but sometime late in the year 1938 it came to the attention of the then receiver, a Mr. Ezell, that there might be some value in the Snyder estate and, upon investigation through an attorney in Winchester, he learned that it had substantial assets. Mr. Ezell having been succeeded as receiver by Mr. Cable on January 21, 1939, this action was instituted.

The contention of the plaintiff is that the letter of May 5, 1933, was intended to create the belief that the Snyder estate was without assets for the purpose of inducing the receiver not to sue upon the assessment; that the statements contained in it were false and that the receiver, believing them to be true, relied on them and was fraudulently induced to refrain from suing —a step which he otherwise would have taken at that time. That when the fraud was later discovered suit was promptly brought and that defendant is now estopped from pleading limitations.

The defendant contends that it did not intend to state and did not state that the estate was without assets and that the contents of its letter were literally true. It is testified that when the letter from the receiver of May 1, 1933, was received, it was discussed at a meeting of the board of directors. That it was the opinion of the board and of its legal adviser that the bank, as trustee, had no right to acknowledge validity of the debt or to waive the period of limitation or to take any action waiving on behalf of the beneficiaries, on whom any loss would fall, any rights which might legally exist against collection of the assessment. That the defendant at that time had in its hands in cash belonging to the estate not over $300 or $400 and, because of frequent payments of income to the beneficiaries, rarely had on hand more cash than this. That the contents of the letter from the receiver were discussed with the beneficiaries and that they also were without any ready money with which to pay the assessment. In other words, the attitude of the defendant was, as testified to by its cashier, that it had no funds from accumulated income with which to pay the assessment and that in any event it was not willing to pay the amount voluntarily and did not intend to do so until the right to collect was established by suit and, in the meantime, that it as trustee had no right to commit itself to the validity of the debt or waive any rights in connection with it. It is evident that defendant, at the very best, intended to furnish no aid or encouragement to the receiver in his efforts to collect. It, therefore, ignored the request to sign a waiver and the request for the other information asked and contented itself with the bare statement that "the Misses Burton have no money with which to pay the assessment". The defendant insists that this statement was literally true; that they meant only to say that the Misses Burton had no money to pay a $5,000 debt and did not intend to imply that the estate had no assets.

The bank officials admit that they were careful to say nothing which would lend any encouragement to the receiver to sue and I think it may be said that they apparently hoped to discourage him. They were clearly not frank in telling him of the entire situation, but the lack of frankness

consisted in failing to give information requested rather than in giving deliberately deceptive information. In any event it would seem that had the receiver been alert and attentive to his duties he would not have allowed the matter to rest there. The answer of defendant was plainly unsatisfactory and incomplete in that it failed to sign or return the waiver and ignored the request for other information sought. The amount involved was such as that the possibility of collecting it justified closer investigation before charging the debt off as worthless. That it had reason for doing this and ready means whereby it might be done appear from the evidence.

As I understand the evidence, the securities owned by Mrs. Snyder had been, previous to her death, in the custody of the Texas bank, and following her death and pursuant to the terms of her will that bank delivered them to the defendant bank. If this be true, the plaintiff had knowledge of the existence of these securities and their character; it knew that there was an estate of substantial size—or that there had been a few years before. The defendant bank as executor and trustee was compelled to and did make an appraisement of the estate which was a public record in the office of the Clerk of the Corporation Court of Winchester and it also made periodical settlements of its account with the estate before the Commissioner of Accounts, which were also matters of record and from which the income of the estate and the sources from which derived could be ascertained by anyone caring to inspect them. It seems unlikely that the cashier of the bank should have intended to give deliberately untrue information when he knew that it could be refuted by the public records. And while the intention of the defendant would not be material if its representations in fact accomplished the result claimed, it seems equally unreasonable that an alert receiver would have ignored the avenues open to him to ascertain the condition of the estate. It is not uncommon that debtors unwilling to pay debts, or for the time being without ready money to do so, tell their creditors that they haven't "any money to pay" or make some similar statement; but it is uncommon for creditors, upon such a statement, to abandon any effort to discover whether the debtor has resources from which payment can be compelled.

There are undoubtedly situations in which a debtor may be estopped from pleading limitations, but in most of the cases where the principle is applied it will be found that it is based on a previous waiver or a promise not to make such plea or where delay of suit was induced by promises to pay at some future time, or some like representation which caused the creditor to postpone suit in the belief that the debt would ultimately be paid or the right to enforce it not lost. The authorities cited by plaintiff are of this kind. But in the instant case the defendant refused to acknowledge the debt as requested, it refused to waive limitations, it made no promise to pay at any time. No case has been cited and I know of none where the statement of a debtor, whether true or false, that he has no money to pay a debt, has been considered as estopping him from later pleading the statute of limitations against a creditor who had ample and easy opportunity to investigate the truth of the statement and who, if deceived, was deceived only because he was too indifferent to investigate. And it would be a dangerous precedent to establish. Suits are permitted on unpaid debts that the creditor may compel their present payment or may have the debt determined and reduced to a record judgment which may ultimately be collected. And statutes of limitation are for the purpose of compelling creditors to be alert and active in the prosecution of their claims in order that evidence either in support or denial of their merits may not be lost or become uncertain through lapse of time. It has never been held that the period of limitation began to run only from and after such time as it was apparent to the creditor that the debtor had assets from which the debt could be collected, or that the period of limitation was in a state of suspension solely because the creditor believed, no matter what the source of his belief, that suit would be ineffective. If we were to adopt such a rule, the purpose and effect of the statutes of limitation would be largely nullified.

I am of opinion that the defendant is not estopped to plead limitations, that the defense is good and the action should be dismissed, with costs to defendant.