[Civ. No. 23522.   First Dist., Div. Two.   June 23, 1967.]

JULIA M. CASEY, Plaintiff and Appellant, v. MARY ANSCHUTZ et al., Defendants and Respondents.

Knox, Herron & Pierce and E. Patricia Herron for Plaintiff and Appellant.

Mullally & McCorkindale and Lawrence E. Mullally for Defendants and Respondents.

SHOEMAKER, P. J.—On May 29, 1962, plaintiff Julia Casey filed a complaint to recover damages for personal injuries sustained in an automobile accident which occurred on December 6, 1960, while she was riding as a passenger in a car driven by defendant Leonora Anschutz with the consent of the owner, defendant Mary Anschutz. After the cause was at issue, it was pretried.

The pretrial order provided that the issues in dispute included negligence, wilful misconduct, contributory negligence, assumption of the risk, the statute of limitations and estoppel to plead said defense. Subsequently it was decided that these issues would be severed for trial, in that a jury would first pass upon the issues bearing upon liability and then the issues of the statute of limitations and estoppel to plead this defense would be tried by the court, sitting without a jury.

The first phase of the bifurcated trial resulted in a $6,000 verdict in favor of plaintiff.

We summarize the evidence given at the second phase of the trial: Plaintiff Julia Casey testified that she and defendant Leonora Anschutz were friends and fellow employees who had at one time worked for the same caterer. On December 6, 1960, the date of the accident, plaintiff accepted a ride in a 1949 Ford which Leonora was driving. Plaintiff had never ridden in the Ford before, but had previously ridden in a Mercury and a Volkswagen driven by Leonora. Plaintiff was unaware that the Ford did not belong to Leonora and had been borrowed from her mother-in-law, defendant Mary Anschutz.

On the day following the accident, Leonora came to plaintiff's home, informed her that she had no insurance and offered to take plaintiff's job and pay her the wages therefrom to cover her doctor's bills. Plaintiff declined this offer. Plaintiff testified she was unwilling to accept or rely upon this offer because she did not think that it was right for Leonora to pay her bills when she had insurance of her own.

Two days after the accident, Leonora was again at plaintiff's home when her insurance agent, Thomas Tedrick, telephoned plaintiff to discuss the accident. Plaintiff handed the telephone to Leonora, who informed Tedrick, in plaintiff's hearing, that she had no insurance.

Plaintiff stated that Leonora was her friend and she had no reason to disbelieve her statement that she was uninsured and placed full reliance thereon. On November 11, 1961, a few

days after she had employed an attorney to represent her, plaintiff and her husband went to Leonora's home and obtained her signature to a written statement that she had "no insurance on the '49 Ford I had borrowed. . . ."

Plaintiff thereafter presented her claim, arising out of the automobile accident, to her own insurance carrier. On April 18, 1962, some four months after her cause of action against Leonora had been barred by the applicable one-year statute of limitations (Code Civ. Proc., § 340, subd. 3), plaintiff's insurance carrier advised her that Leonora was in fact insured against the accident because a policy on an automobile owned by her afforded coverage when she was driving other cars.

Plaintiff's insurance agent, Tedrick, corroborated plaintiff's testimony as to his telephone conversation with Leonora. He was certain that she had denied having insurance on the Ford or on any other vehicle registered in her name.

Leonora testified that she and her husband owned a Mercury automobile which was fully insured and registered in their names; that the Ford was owned by her mother-in-law, Mary Anschutz, and was uninsured. Leonora stated that plaintiff had ridden in the Ford approximately two months before the accident and that Leonora had commented upon the lack of insurance and had stated that she hoped plaintiff did not mind riding in a car without any insurance on it. Leonora denied that plaintiff, Tedrick or anyone else had ever asked her, after the accident, whether she had insurance on any car owned by her. She had never asked plaintiff to refrain from suing her and had never promised to pay her any amount of money. Leonora was herself unaware, during the entire year following the accident, that the insurance coverage on the Mercury was applicable when she was driving another car. When she talked to Tedrick on the telephone, she told him only that there was no insurance on the car she was driving at the time of the accident. She admitted signing the November 11 statement to the effect that there was no insurance on the Ford.

On June 30, 1965, the court filed a memorandum decision indicating that it had determined the issues of the statute of limitations and estoppel in favor of defendants.

On July 9, 1965, plaintiff moved for an order reopening the case for the purpose of receiving newly discovered evidence.

On August 23, 1965, the court ordered the trial record augmented to include a stipulation that Leonora Anschutz had reported the accident to the California State Automobile

Association on December 8, 1960 (two days after the accident), that the car was inspected on that date at the Richmond district office, and that a statement of no insurance was obtained from Mary Anschutz on December 20, 1960.

On the same day, the court filed findings of fact as follows: that defendant Leonora Anschutz had stated orally and in writing to plaintiff on one or more occasions before the running of the statute of limitations that she had no insurance; that the last such statement was in writing on November 11, 1961, and was made at plaintiff's request; that such statements were made by Leonora Anschutz at a time when she believed them to be true and were made by her in good faith; that after the statute of limitations had run, plaintiff was informed by her insurance carrier that a policy of insurance covering another car owned by Leonora Anschutz' husband did in fact provide coverage for Leonora Anschutz while she was driving the automobile of Mary Anschutz at the time of the accident; that Leonora Anschutz' statements regarding a lack of insurance were made without any intention of persuading plaintiff to delay the filing of an action against either defendant; that there was no confidential relationship existing between any of the parties; that defendants had at no time requested plaintiff to refrain from filing or to delay the filing of a complaint against them.

The court held, as a matter of law, that the statute of limitations ran on plaintiff's action on December 7, 1961, and that defendants were not estopped from asserting the statute of limitations. Judgment for defendants was accordingly entered, and plaintiff appealed therefrom.

Plaintiff's sole contention is that the judgment is not adequately supported by the findings because even in the absence of a confidential relationship between the parties and of actual bad faith or intent to deceive on the part of defendant Leonora Anschutz, the latter's statements relative to a lack of insurance could nevertheless have resulted, under the circumstances here present, in the creation of an estoppel to assert the statute of limitations.

Plaintiff has cited a number of California cases as authority for the rule that where a defendant's conduct induces delay in the commencement of an action against him, he is estopped from relying upon the statute of limitations even though there was no designed fraud on his part. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524-525 [39 Cal.Rptr. 377, 393 P.2d 689]; *Benner* v. *Industrial Acc. Com.* (1945) 26 Cal.2d 346, 349-350

[159 P.2d 24]; *Estate of Pieper* (1964) 224 Cal.App.2d 670, 690-691 [37 Cal.Rptr. 46]; *Industrial Indem. Co.* v. *Industrial Acc. Com.* (1953) 115 Cal.App.2d 684, 689-690 [252 P.2d 649].) In *Estate of Pieper, supra,* at page 690, the court stated, "[O]ne cannot justly or equitably lull his adversary into a false sense of security and thereby cause him to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his conduct as a defense to the action when brought; *actual fraud in the technical sense, bad faith or intent to mislead are not essential to the creation of an estoppel,* but it is sufficient that the defendant made misrepresentations or so conducted himself that he misled a party, who acted thereon in good faith, to the extent that such party failed to commence the action within the statutory period . . ." (italics supplied).

Defendants, on the other hand, rely upon *California Cigarette Concessions* v. *City of Los Angeles* (1960) 53 Cal.2d 865, 869 [3 Cal.Rptr. 675, 350 P.2d 715], and *Safway Steel Products, Inc.* v. *Lefever* (1953) 117 Cal.App.2d 489, 491 [256 P.2d 32], as authority for the rule that the doctrine of equitable estoppel is applicable only where the following four conditions are established: *The party to be estopped must be apprised of the facts;* the other party must be ignorant of the true state of the facts; the party to be estopped must have intended that his conduct be acted upon, or so act that the other party had a right to believe that it was so intended; and the other party must rely on the conduct to his prejudice. Defendants assert that the court's finding that Leonora Anschutz believed that she was uninsured and acted in good faith when she made statements to that effect amounts to a finding that she was not apprised of the true facts relative to the existence of insurance coverage and thus precludes the application of the doctrine of equitable estoppel.

Although the cases relied upon by the respective parties would appear to be inconsistent with one another, the court in *Safway Steel Products, Inc.* v. *Lefever, supra,* at page 491, clearly viewed the two rules as reconcilable and, after listing the four conditions required for the creation of an estoppel, went on to state, "An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. [Citation.] Negligence, that is careless and culpable conduct, is, as a matter of law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel. [Citation.]" (P. 491.) (To the same effect, see

*Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.* (1960) 54 Cal.2d 773, 778-779 [8 Cal.Rptr. 448, 356 P.2d 192]; *Parke* v. *Franciscus* (1924) 194 Cal. 284, 297 [228 P. 435]; *Mercantile Acceptance Corp.* v. *Liles Bros. Motor Co.* (1959) 167 Cal.App.2d 779, 785 [334 P.2d 983]; *Marks* v. *Bunker* (1958) 165 Cal.App.2d 695, 701 [332 P.2d 340]; *Banco Mercantil* v. *Sauls Inc.* (1956) 140 Cal.App.2d 316, 323 [295 P.2d 55].)

In our case, an examination of the trial court's findings, conclusions of law and memorandum decision compels us to conclude that it failed to consider the possibility that defendant Leonora Anschutz might have been guilty of culpable negligence in failing to apprise herself of the contents of the insurance policy on the Mercury automobile owned by her and her husband before representing to plaintiff that she was uninsured.

Defendants contend that a finding as to the existence or nonexistence of culpable negligence on Leonora's part is unnecessary because the court also found that she made the statements without any intention of persuading plaintiff to delay the filing of an action at law. Defendants suggest that this finding eliminated another of the four conditions required for the creation of an estoppel and thus furnishes an alternative basis for upholding the judgment. This argument is not persuasive. In *California Cigarette Concessions* v. *City of Los Angeles, supra,* at page 869, and *Safway Steel Products, Inc.* v *Lefever, supra,* at page 491, both cases upon which defendants rely, the court stated that one of the elements of equitable estoppel is that the party estopped must either intend that his conduct shall be acted upon *or must so act that the party asserting the estoppel had a right to believe it was so intended.* In the instant case, the court made no finding that Leonora's statements to plaintiff were not made under such circumstances or were not of such a nature as to create the justifiable belief, on plaintiff's part, that it would be futile and impractical for her to bring suit against a defendant who was uninsured and without any other monetary assets of which plaintiff was aware.

Defendants also place considerable reliance upon the case of *Cable* v. *Commercial & Sav. Bank* (W.D. Va. 1940) 31 F.Supp. 628, which the trial court cited in its memorandum decision. In that case, defendant was alleged to have been estopped to raise the statute of limitations as a bar to an action to enforce an assessment against a trust because

defendant had previously led plaintiff to believe that the trust was without any assets and that suit would therefore be futile. The court held the doctrine of estoppel inapplicable and based such holding, in part, upon the evidence that defendant "had ample and easy opportunity to investigate the truth of the statement and . . . if deceived, was deceived only because he was too indifferent to investigate" (p. 631). The court also expressed the view, however, that a debtor could never, under any circumstances, be estopped to rely upon the statute of limitations merely because he had led his creditor to believe that he had no assets from which the debt could be collected and that suit would accordingly be ineffective.

In the instant case, the trial court made no findings to the effect that plaintiff's failure to learn of Leonora's insurance coverage was due to her own neglect or indifference in failing to avail herself of any readily available source of information relative to the truth or falsity of Leonora's statements. The record obviously falls far short of establishing as a matter of law that plaintiff was guilty of any such neglect.

Moreover, a reading of the trial court's memorandum decision indicates that it cited the *Cable* case as authority for the rule that the doctrine of equitable estoppel should never, under any circumstances, be held applicable to a situation where a defendant has misrepresented or concealed the existence of monetary assets rather than the existence of a cause of action. We cannot sanction the adoption of any such absolute rule. In our opinion it would be unwise and unrealistic. As a practical matter, we are convinced that where a plaintiff has secondary insurance coverage of his own and has been misled into believing that the prospective defendant is, in effect, "judgment-proof" and possesses neither insurance coverage nor other assets sufficient to compensate the plaintiff for his loss, such plaintiff should not be required to bring suit nevertheless and to incur court costs and attorney's fees in return for a worthless judgment. Although it is true, as pointed out in the *Cable* case, that it has never been held that the statute of limitations begins to run only at such time as the plaintiff ascertains that the debt or other liability is collectible, principles of basic fairness compel the conclusion that the defendant ought not be allowed to mislead the plaintiff, either intentionally or negligently, and then reap the benefits of his own culpable misconduct and the plaintiff's justifiable reliance thereon.

■ We are satisfied that there is sufficient evidence in the record to support a finding that defendant Leonora Anschutz was guilty of culpable negligence in failing to apprise herself of the contents of the insurance policy on the Mercury automobile owned by herself and her husband before representing to plaintiff that she was uninsured. Such being the case, we reverse the judgment for the reason that the court failed to find upon an issue that was material and which was raised by the pleadings and the evidence. (*Branche* v. *Hetzel* (1966) 241 Cal.App2d 801, 810 [51 Cal.Rptr. 844]; *Culbertson* v. *Cizek* (1964) 225 Cal.App.2d 451, 464 [37 Cal.Rptr. 548].)

Agee, J., and Taylor, J., concurred.