[Civ. No. 19257.   Second Dist., Div. Three.   Jan. 30, 1953.]

INDUSTRIAL INDEMNITY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and NELLIE VARELA, Respondents.

Herlihy & Herlihy and E. H. Herlihy for Petitioner.

Edmund J. Thomas, Jr., and Harry O. Juliani for Respondents.

VALLÉE, J.—Review of an award of the Industrial Accident Commission. On February 2, 1946, respondent Nellie Varela, referred to as the applicant, sustained an injury to her left eye which arose out of and occurred in the course of her employment. On August 3, 1950, applicant filed an application for adjustment of claim with the commission. Petitioner is the insurance carrier for applicant's employer. It contended before the commission that the claim was barred by the statute of limitations. The commission made an award in favor of applicant, adjudged that petitioner was estopped from raising the defense of the statute of limitations and that the claim was not barred. Petitioner contends here that the latter conclusions of the commission are not supported by any substantial evidence. That is the sole question for decision.

The parties agree that ordinarily the statute of limitations would have run one year from the date of injury, or on February 2, 1947. (Lab. Code, § 5405.) It will be noted that the application for adjustment of claim was filed more than four years after February 2, 1946, the date of injury. Petitioner, as we read its petition for review, concedes that as to the period between February 2, 1946, and May 12, 1949, the evidence on the question of estoppel is in conflict and, inferentially at least, concedes that if the application had been filed within one year after May 12, 1949, it would not have been barred by the statute of limitations. It argues that on May 12, 1949, applicant ceased to rely on any conduct or representations of petitioner and that as she did not file her application within one year thereafter it is barred. We have concluded that the findings of the commission are supported by substantial evidence.

The evidence and the reasonable inferences to be drawn therefrom will be stated in the light most favorable to applicant. (*Coborn* v. *Industrial Acc. Com.*, 31 Cal.2d 713, 716-717 [192 P.2d 959].) The injury occurred on February 2, 1946, in San Diego. Applicant's employer was ill at the time, and she reported the injury to him within a few days. Within less than two months after the injury, applicant's employer reported the fact to petitioner. About two months after the injury, applicant reported the injury to petitioner's representative, one Francis, at its office in San Diego. Francis asked her ''a lot'' of questions about the accident, filled in some blanks on a form which applicant signed, and told her ''You will hear from us.'' About six weeks later, not

having heard from petitioner or Francis, applicant again went to petitioner's office in San Diego and talked to Francis. Applicant "told him she hadn't heard anything from him and he said, 'Well, you will hear.' She said that maybe she ought to get an attorney and he said, 'No, we'll take care of this. Don't worry about it.'" On this occasion, Francis also asked applicant some questions about the accident and wrote on a pad. Thereafter she went to see Francis five or six times in San Diego and called him every five or six weeks, and on each occasion was told she would hear from the company.

Applicant went to see Francis again on November 13, 1947. She testified she went to see him on this occasion because "they always told me I would hear from them and I never did." She had just come from the hospital after having surgery on her eye. She was wearing plastic glasses with "just a tiny pinhole," and her right eye was blindfolded with a "tiny" opening. She could not turn her eyes from side to side. Francis told her he could not understand why she had not heard from petitioner "in all this period of time," that the first report must have been lost —he would make out a new one. Applicant testified Francis "told me that the reason for this report was he told me the first one had been lost and he himself couldn't understand why I haven't heard. One time before when I saw him he took notes and had written them down and said I should hear from them and if not that I should come in or call up but I should hear from them." Francis told her he had written a couple of letters and was going to write again. He asked her about the details of the accident, and filled out another form which she signed. Because of the condition of her eyes, she was unable to read the form. Francis did not read it to her—she assumed he had written down what she had told him. There was evidence that Francis made several incorrect statements in the report. He told applicant on this occasion she should call petitioner's Los Angeles office. She called that office "every two-three months for a period of a year and a half, or more."

About March 28, 1949, applicant wrote to petitioner saying that she "would appreciate very much hearing from you in regard to my claim." Petitioner did not answer the letter.

The last telephone call applicant made was to petitioner's office in Los Angeles on May 12, 1949. She testified she

did not know whom she talked to and that she was "a wee bit angry," crying, and "having a lot of trouble with my eye," told the person she talked to she was going to get a lawyer and sue them. The person she talked to did not tell her "the company was not going to pay her anything" or tell her "there was nothing further in his file to indicate that the accident was compensable" or that "the company was not assuming liability" for her claim. Applicant also testified he told her "it takes time," and "that I shouldn't get excited and all riled up. I was crying over the phone I remember that, and he told me that I could call again in six weeks or two months. He told me that every time I called and I told him, 'You have been telling me to call back every six weeks or two months or three months,' and he told me not to get excited and I told him I said I was tired of all this and I was going to get a lawyer and he said that would not be necessary and that this would be taken care of automatically." She further testified that she eventually got a lawyer; she did not get one, or try to get one, at the time of this last conversation; "I thought perhaps I would hear from them eventually and I waited, oh, I don't know how long, but Mr. Frank Shull and everybody that I talked to thought I should get a lawyer. They thought that the insurance company was giving me a run around." She filed her application with the commission immediately after consulting counsel in 1950.

The reports made out by Francis were sent to petitioner's Los Angeles office. At one of the hearings, the referee found a memorandum in petitioner's file dated December 15, 1948, which read: "Here it is—the lost has been found!"

After the accident, Doctors Kilgore and Berends treated applicant. On December 28, 1948, petitioner requested each doctor to give it a report as to what he did and what his findings were at the time he examined applicant. Doctor Kilgore wrote to applicant asking her permission to give petitioner her case history. In the early part of 1949, the doctors sent reports to petitioner. Petitioner's file showed it did not take any action in the matter between November 13, 1947, and December 28, 1948. No explanation was offered for the delay.

There were four hearing in this matter. After two hearings, it was submitted and an award made in favor of applicant. Francis was present at the first hearing, and heard applicant testify she first reported the injury to him about two months

after it happened. He did not, prior to the submission of the matter at the end of the second hearing, take the stand to rebut her testimony, nor was the report made on November 13, 1947, offered in evidence by petitioner, although it was in the possession of petitioner's counsel at the time, nor did petitioner produce its file at those hearings. Thereafter, the commission granted a rehearing and two additional hearings were held. Prior to the fourth and last hearing, in a request for a further hearing petitioner's counsel told the commission that before the application for adjustment of claim was filed petitioner's file "consisted of a statement taken from the applicant on November 13, 1947, and a telephone memorandum dated May 12, 1949." The file at that time also consisted of (1) rough notes made by Francis on November 13, 1947; (2) the memorandum of December 15, 1948, reading "Here it is—the lost has been found!"; (3) the letter of March 28, 1949, from applicant to petitioner; and, (4) the correspondence between petitioner and applicant's physicians and their reports. These items were not disclosed until the last hearing which was granted contingent upon production of the file and of Francis as a witness. At the last hearing Francis testified he had no independent recollection on the subject, but by referring to the file he testified applicant first reported the injury on November 13, 1947, and he knew at that time that the claim "was filed late" but he did not so advise applicant.

Petitioner's file was produced at the last hearing. It did not contain a copy of any communication from petitioner to applicant. Petitioner did not, at any time, either orally or in writing, tell applicant her claim was rejected.

The equitable doctrine of estoppel *in pais* is applicable in a proper case to prevent a fraudulent or inequitable resort to the statute of limitations. (*Wells, Fargo & Co.* v. *Enright*, 127 Cal. 669 [60 P. 439, 49 L.R.A. 647]; 16 Cal. Jur. 576, § 172; 53 C.J.S. 962, § 25.) A person by his conduct may be estopped to rely on the statute. Where the delay in commencing an action is induced by the conduct of the defendant, it cannot be availed of by him as a defense. (*Adams* v. *California Mut. Bldg. & L. Assn.*, 18 Cal.2d 487, 489 [116 P.2d 75]; *Langdon* v. *Langdon*, 47 Cal.App.2d 28, 31-32 [117 P.2d 371]; *Berkey* v. *Halm*, 101 Cal.App.2d 62, 68 [224 P.2d 885]; *Schaefer* v. *Kerber*, 105 Cal.App.2d 645, 647 [234 P.2d 109].) When the act or promise of one causes another to do or forbear to do something which he

otherwise would have done, the other is estopped from taking advantage of the act or omission caused by his own act or promise. (*Rapp* v. *Rapp*, 218 Cal. 505, 509 [24 P.2d 161]; *Quanchi* v. *Ben Lomond Wine Co.*, 17 Cal.App. 565, 567 [120 P. 427]; *Miles* v. *Bank of America*, 17 Cal.App.2d 389, 397-399 [62 P.2d 177].) ▮ One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause him to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his conduct as a defense to the action when brought. (*Carruth* v. *Fritch*, 36 Cal.2d 426, 433 [224 P.2d 702].)

▮ Actual fraud in the technical sense, bad faith, or an intent to mislead, are not essential to create such an estoppel. ▮ It is sufficient that the debtor made misrepresentations or so conducted himself that he misled the creditor, who acted thereon in good faith to the extent that he failed to commence action within the statutory period. (34 Am.Jur. 324, § 412; Anno. 130 A.L.R. 49, 50; 24 A.L.R.2d 1435.) ▮ Acts or conduct which wrongfully induce a party to believe an amicable adjustment of his claim will be made, may create an estoppel against pleading the statute. (*Miles* v. *Bank of America*, 17 Cal.App.2d 389, 398 [62 P.2d 177]; Anno. 130 A.L.R. 38; 27 A.L.R.2d 1430.) ▮ An insurer cannot hold out a hope of amicable adjustment of a claim and thus delay action against it, and then plead the delay caused by its own conduct as a defense to an action when brought. (*Perry* v. *Magneson*, 207 Cal. 617, 621-622 [279 P. 650].) ▮ It is only when a substantial period for instituting proceedings supervened after expiration of the delay engendered by a party that his conduct or representations will not estop him from asserting the bar of the statute, or where such conduct or representations did not in fact induce the party to forbear from institution proceedings. (53 C.J.S. 967, § 25. ▮ A party has a reasonable time in which to bring his action after the estoppel has expired. (Anno. 130 A.L.R. 20; 24 A.L.R.2d 1423.)

▮ Whether an estoppel exists—whether the acts, representations, or conduct lulled a party into a sense of security preventing him from instituting proceedings before the running of the statute, and whether the party relied thereon to his prejudice—is a question of fact, not of law. (*Cruise* v. *City & County of San Francisco*, 101 Cal.App.2d 558, 562 [225 P.2d 988]; Anno. 130 A.L.R. 13.)

The facts in *Benner* v. *Industrial Acc. Com.*, 26 Cal.2d 346 [159 P.2d 24], are closely parallel to those in the case at bar. In holding that under the evidence the insurance carrier was estopped from invoking the statute of limitations, the court speaking through Mr. Justice Shenk, said (pp. 349-350) : ''To create an equitable estoppel, 'it is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.' (3 Pomeroy Eq. Jur. (5th ed.) § 812, p. 233.) . . . It follows that the employer and its insurance carrier cannot escape the consequences of their acts or conduct affirmatively engaged in to procure delay for purposes of settlement, or investigation or otherwise, upon which the employee has relied and by which he has been induced to delay the filing of a claim until after the expiration of the statutory period. Such conduct, so relied upon, becomes the basis of an estoppel against the party responsible for the delay and should, under the facts here presented, preclude the bar of the statute of limitations.'' (*Cf. Sears* v. *Rule,* 27 Cal.2d 131, 145-148 [163 P.2d 443] ; *Tyra* v. *Board of Police & Fire Comrs.,* 32 Cal.2d 666 [197 P.2d 710] ; *Truck Ins. Exch.* v. *Industrial Acc. Com.,* 36 Cal.2d 646 [226 P.2d 583] ; *Mendibles* v. *City of San Diego,* 100 Cal. App.2d 502 [224 P.2d 42].)

Tested by the rules stated, the evidence abundantly supports the conclusion of the commission. Applicant promptly reported the injury to her employer and to petitioner. Petitioner did nothing to discharge its obligation to furnish medical treatment or to pay compensation. Its efforts were directed solely to building a defense to applicant's claim by taking statements from her and obtaining reports from her physicians. The record shows a studied effort on the part of Francis to cause applicant to delay filing a claim with the commission. One cannot read the record without fairly concluding that he was, to use a phrase in the record, giving her a "runaround." He deliberately misled her. She relied on him and did not realize her legal rights until she consulted counsel. Petitioner did not at any time reject the claim. It clearly appears from the record that applicant had no knowledge of legal proceedings, and that she was ignorant of her rights. A reasonable inference, even from the cold record, is that she was gullible and easily misled. The commission was warranted in concluding that she reasonably relied on petitioner's representations and conduct until she consulted counsel immediately

prior to the time she filed her application. It cannot be said as a matter of law that the inducement for delay ceased to operate more than a reasonable time prior to the institution of the proceeding. We cannot say that the proceeding before the commission was not seasonably instituted after applicant became aware that petitioner had in fact rejected her claim.

Petitioner argues there were inconsistencies in the testimony of applicant, and that the commission should have accepted that testimony from which it must have concluded that she did not rely on any representation or conduct of petitioner after May 12, 1949. ██ "A reviewing court cannot reject testimony of a witness that has been believed by the trier of the fact unless it is a physical impossibility that it be true, or its falsity is apparent without resorting to inferences or deductions. (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758].) . . . ██ The trier of fact may believe and accept a portion of the testimony of a witness, and disbelieve the remainder or have a reasonable doubt as to its effect. ██ On appeal that portion which supports the judgment must be accepted, not that portion which would defeat, or tend to defeat, the judgment. (*People* v. *Thomas,* 103 Cal.App.2d 669, 672 [229 P.2d 836].)" (*People* v. *Whitehurst,* 112 Cal.App.2d 140, 144 [245 P.2d 509].) ██ Questions as to the credibility of applicant and the weight of the evidence are for the commission, and if there is any evidence, whether direct or by reasonable inference, which will support the finding of the commission, a reviewing court has no power to disturb it. (*Mercer-Fraser Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 102, 114 [251 P.2d 955].) ██ The function of the court on review of the action of the commission is to determine whether the evidence, if believed, is substantial and supports the findings.

*Kemper* v. *Industrial Acc. Com.,* 177 Cal. 618 [171 P. 426], relied on by petitioner is not in point. The Kemper case merely held that the conclusion of the commission that the claim was barred was supported by the evidence.

Award affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied February 17, 1953.