[Civ. No. 24177.   First Dist., Div. Three.   June 8, 1967.]

NATIONAL LEAD COMPANY, Petitioner, v. WORK-
MEN'S COMPENSATION APPEALS BOARD and
JOHN E. RANDOLPH, Respondents.

Henry G. Sanford for Petitioner.

Everett A. Corten, Selma Mikels Barnett and John H.
Sutter for Respondents.

DRAPER, P. J.—Injured in the course of his employment April 26, 1957, the employee first filed his application for compensation and medical expenses November 19, 1964. Respondent board made an award for permanent partial disability and future medical treatment. Petitioner, the permissibly self-insured employer, seeks annulment of the award.

Following his back injury, applicant was sent by his employer to an orthopedist chosen by it. Temporary disability payments were made to applicant through August 31, 1958. A laminectomy was performed in July 1957, but complications following surgery necessitated continuing treatment and a number of office visits. Applicant was seen by the doctor July 26, 1960. The doctor testified that his custom in such cases, which he thinks he followed here, was not to make a definite appointment for future consultation, but to say "If you have trouble I want to see you; . . . come back and see me when you think you need to." Applicant testified that he was told: "if you hurt, come back." The doctor wrote petitioner August 11, 1960: "I felt that he should soon be ready for a permanent disability rating, and will therefore re-examine him in a few months with that in mind." Applicant suffered no increased pain until sometime after July of 1963. In March 1964, he returned to the doctor, who telephoned the employer to ask about applicant's current status. The officer to whom he spoke said he would inquire and advise the doctor. He did not do so. In September 1964, the company wrote the doctor that it would not pay his bill for the March visit, but did not inform applicant of this refusal. Meanwhile, applicant had gone to other doctors, who in December performed another laminectomy. There is evidence that this treatment was necessitated by the 1957 injury. Petitioner-employer paid all the bills for applicant's treatment through July 26, 1960. For some unexplained reason, however, it dropped applicant's name from its report of pending claims in January 1960, although it had been included through 1959, and restored it to the list only when this claim was filed.

An application for workmen's compensation benefits must be filed within one year from the date of the last furnishing of any benefits under the act (Lab. Code, § 5405, subd. (c)). More than four years elapsed from the medical treatment of July 26, 1960, paid for by the employer, to the filing of the application on November 19, 1964.

But one cannot "lull his adversary into a false sense

of security, and thereby cause him to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his conduct as a defense" (*Industrial Indem. Co.v. Industrial Acc. Com.*, 115 Cal.App. 2d 684, 690 [252 P.2d 649]. Under this rule, the board found an estoppel here.

The facts here do not present the affirmative urging to delay which existed in *Industrial Indemnity*. But the doctor here chosen by petitioner was its agent for the treatment of applicant. That doctor, in July of 1960, told applicant to return when he suffered pain. Applicant understandably felt that he was to return only upon some increase of pain, or upon call from the doctor. Yet the doctor, at the same time, advised the employer that the patient "should soon be ready for a permanent disability rating" and that he would re-examine for that purpose "in a few months." He never notified the patient to return for such examination. Meantime, although reports of the doctor from the date of accident had expressly or impliedly contemplated some permanent disability, the employer had, six months before the 1960 examination, closed its file on the case without notice to the doctor or the employee. Without any application, the employee had been paid temporary disability for 16 months and had been furnished medical treatment for more than 3 years, including an 8-month period after retraining and re-employment by another concern. This unforced furnishing of medical treatment continued without question through July 26, 1960. On that day, his sense of continuing availability of medical care from the employer was kept alive by the doctor's direction to return when he felt more pain.

Thus there is evidence to support the board's finding of estoppel. The one-year period for filing formal application did not begin to run before March of 1964, the earliest possible date for inferring any question by the employer of applicant's right to continued care. The application, filed in November of that year, was timely. Of course, the board could have inferred that applicant himself should have acted at some earlier date in the four-year period. But it impliedly found to the contrary. Under the peculiar facts of this case, we find this determination supportable.

Award affirmed.

Salsman, J., and Brown (H. C.), J., concurred.