[Civ. No. 21261. Fourth Dist.. Div. Two. Oct. 18, 1979.]

MICHAEL HURWITZ et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
PATRICIA M. ESPOSITO, Respondents.

**COUNSEL**

Parker & Dally, Robert L. Dally and Stanford Herlick for Petitioners.

Richard W. Younkin, William B. Donohoe, Dexter W. Young and Richard V. Jackson for Respondents.

## Opinion

**KAUFMAN, J.**—The workers' compensation judge determined that the claim of applicant Patricia M. Esposito was barred by the statute of limitations. After granting reconsideration, the Workers' Compensation Appeals Board (Board) held that the employer, Michael Hurwitz, and his workers' compensation insurance carrier, Industrial Indemnity Company, were estopped to assert the statute of limitations and remanded the case for further proceedings at the trial level. The employer and its insurance carrier (collectively, defendants) unsuccessfully petitioned for reconsideration and thereafter petitioned this court for a writ of review which was granted.

The applicant, born July 14, 1952, was employed as a legal secretary by Michael Hurwitz, an attorney practicing in Palm Springs in association with another attorney, Philip H. Flickinger. On May 2, 1975, with the permission of Mr. Hurwitz, applicant stayed at the office past the usual 5 o'clock closing time typing a paper for her husband, Samuel Esposito. At about 9 p.m. she left the office, and, in coming down the allegedly unlighted common stairway of the office building, she fell, injuring her right leg. She had never before done typing of a personal nature after hours at the office.

Applicant continued working for Mr. Hurwitz until approximately May 14, 1975, at which time she wrote a letter to Messrs. Hurwitz and Flickinger to the effect she was resigning her position. She assigned as reasons for her resignation: "Breach of employment contract"; "clandestine and surreptitious manipulation of my emoluments"; having to work in an atmosphere where her self-respect was continually being "put to the test" by the use of profane language; mental harassment; and "[c]omplete disregard of my physical injury to my leg, which occurred on the job, May 2, 1975." Although not specifically mentioned in the letter, Mr. Hurwitz had apparently rebuked applicant for reporting late to work because of a medical appointment without giving him advance notice.

No medical or temporary disability benefits were furnished by defendants. Although applicant consulted an attorney and engaged him to pursue a third party action for damages on account of her injury against the owners of the office building, she filed no application for workers' compensation benefits with Board until April 11, 1977, almost two years after the date of her injury. In response to the application, defendants denied that the injury arose out of and in the course of the

employment and further asserted that the claim was barred by the statute of limitations inasmuch as the application was not filed within one year after the date of injury.

The case was heard on November 14, 1977. The trial judge found applicant's claim barred by the statute of limitations. In the opinion he stated: "Applicant was represented by counsel. Applicant and counsel were well aware of her rights under the compensation laws, but apparently chose to pursue the third party case, thus permitting the Statute to run."

Applicant filed a timely petition for reconsideration. Board issued an opinion and order granting reconsideration for further study of what Board referred to as the "peculiar facts" and the law "in order to make a just and reasoned decision." On January 4, 1979, Board issued its opinion and decision after reconsideration holding, on the authority of *Reynolds v. Workmen's Comp. Appeals Bd.*, 12 Cal.3d 726 [117 Cal.Rptr. 79, 527 P.2d 631], that defendants were estopped from asserting the statute of limitations by their failure to comply with the rules and regulations of the administrative director pertaining to notices to be given an injured employee.[1]

---

[1] In pertinent part the opinion and decision after reconsideration read: "Upon review of the facts of this case and the law pertaining thereto, the Board finds merit in applicant's argument. Applicant alleges that subsequent to her claimed May 2, 1975, industrial injury, she hired an attorney, Jack Jones, to represent her in a third-party case. She contends this attorney told her that he would not proceed in her third-party case if she filed a workers' compensation claim in relation to her May 2, 1975, injury. He informed her that he was involved in other cases to which defendant employer herein was a party and that if applicant proceeded on a workers' compensation claim, conflict would result. Applicant's husband testified at the November 14, 1977, hearing that he had occasion to engage in two telephone conversations with defendant employer in which he claims defendant employer informed him that he, defendant employer, would oppose any workers' compensation claim applicant might file in relation to her injury. He also testified that applicant's attorney, Mr. Jones, informed him that Mr. Jones believed defendant employer's assistance was necessary in applicant's third-party case. Applicant submits that as a result of the advice of her attorney and the threats and warnings of defendant employer, she delayed filing an Application for Adjudication of Claim until April 11, 1977. Applicant contends that given the circumstances of this case, the statute of limitations should not act as a bar to her claim.

"In reviewing the record of this case, the Board notes that the evidence does not indicate that defendant employer complied with the Rules and Regulations of the Administrative Director, sections 9816, 9817, 9859 and 9880 which set the notice requirements applicable to an employer of an injured employee. Those sections require an employer to notify an injured employee of that employee's possible right to workers' compensation benefits and/or the employer's intention to deny liability for such benefits.

"In *Reynolds vs. WCAB* (1974) 12 Cal.3d 726, 39 CCC 768, the California Supreme Court held that an employer is estopped to assert the statute of limitations as a defense to an employee's claim for workers' compensation benefits where that employer has

Defendants then petitioned for reconsideration contending that the *Reynolds* decision was based upon the doctrine of estoppel and was inapplicable in the case at hand because the evidence established that applicant was represented by an attorney, was aware of her rights under the workers' compensation law, and was specifically aware that her claim must be filed within one year from the date of injury; that applicant discussed the matter with her attorney and deliberately chose not to pursue a workers' compensation claim until almost one year after the statute of limitations had expired and that her delay in filing did not result from defendants' failure to give her the required notice or notices.[2] On March 23, 1979, Board issued its opinion and order denying reconsideration reiterating that *Reynolds* was applicable and that defendants were estopped from asserting the statute of limitations because of their failure to comply with the notice requirements.

Defendants advance on review essentially the same contentions urged in their petition for reconsideration: that the rationale of the *Reynolds* decision is inapplicable in this case in which the applicant was fully aware of her rights under the workers' compensation law and made a deliberate choice not to file a workers' compensation claim within the period of the statute of limitations and that, therefore, the Board's decision is contrary to law and unreasonable; that Board's conclusion that defendants are estopped from asserting the statute of limitations is not

---

knowledge of a possible workers' compensation claim and fails to notify the employee of his possible right to workers' compensation benefits or the employer's denial of liability for such benefits.

"⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

"Applying these principles to the instant case, it would appear that since defendant employer had both notice and knowledge of applicant's alleged injury, defendant employer was under a mandatory obligation to inform applicant of her rights or to issue a disclaimer of liability or notice of nonpayment of benefits. The record indicates that defendant employer failed to fulfill this duty. Under *Reynolds,* defendant is, therefore, now estopped to raise the statute of limitations as defense. Consequently, we will issue a decision amending the Findings and Order filed February 9, 1978, accordingly and return this case to the trial level for hearing and decision on all issued [*sic*: issues] presented."

[2]So far as we have discerned there is no evidence in the record as to whether defendants did or did not give the required notice or notices. Perhaps that is due to the fact that, except for an obscure reference to the *Reynolds* decision in points and authorities filed by applicant, there was apparently no mention of the notice problem at the trial court level. Indeed, applicant's petition for reconsideration did not mention any failure on the part of defendants to give the proper notices. However, the *Reynolds* decision was again mentioned in the points and authorities filed by applicant in support of her petition for reconsideration. Since the parties make no issue of these matters and have proceeded on the premise that the required notice or notices were not given and that the question of lack of notice is properly in issue, we give no consideration to the questions that might otherwise have been presented by these circumstances.

supported by its findings; and that its findings are not supported by substantial evidence based on the entire record.

The principal contention of both applicant and Board is that the *Reynolds* decision is controlling. However, applicant appears to contend that Board found that applicant's failure to file a workers' compensation claim within the statutorily prescribed period resulted from intimidation and warnings by her employer and her attorney's having misled her into believing that her employer's assistance was necessary in the third party action and that that finding by Board is supported by substantial evidence.[3] Applicant is incorrect in several respects.

First, Board made no such finding. Although in its opinion and decision after reconsideration holding that defendants were estopped from asserting the statute of limitations Board did refer to applicant's allegations, contentions and assertions about threats and intimidations, the Board's decision was based squarely on defendants' failure to fulfill the "mandatory obligation to inform applicant of her rights or to issue a disclaimer of liability or notice of nonpayment of benefits" and the *Reynolds* decision. (See fn. 1, *ante.*) Board itself confirmed that fact in its opinion and order denying defendants' petition for reconsideration in which it expressly stated: "In the Board's January 4, 1979, decision, the Board relied upon the doctrine set out in *Reynolds vs WCAB* (1974), 12 Cal.3d, 726, 39 CCC 768, *as the basis of its decision* that defendant is

---

[3]Citing *Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.,* 247 Cal.App.2d 669 [55 Cal.Rptr. 810], a decision of this court, applicant argues that Board's findings of fact are conclusive and final if supported by "any substantial evidence, contradicted or not." Our opinion in *Argonaut,* citing numerous cases, did state the scope of review in those terms. (247 Cal.App.2d at p. 679.) However, in *LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432], the Supreme Court expressly repudiated the "any substantial evidence" scope of review and confirmed that, in accordance with the explicit language of Labor Code section 5952, the appropriate scope of review is to determine whether the Board's findings are supported by substantial evidence based on the entire record. (1 Cal.3d at p. 637; accord: *Lamb* v. *Workmen's Comp. Appeals Bd.,* 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978]; *Garza* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].) There is a considerable difference between the "any substantial evidence" and the "substantial evidence on the entire record" scopes of review; the "substantial evidence on the entire record" standard is not met "by simply isolating evidence which supports the [B]oard and ignoring other relevant facts of record which rebut or explain that evidence." (*Garza* v. *Workmen's Comp. App. Bd., supra;* accord: *Lamb* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at p. 281; *LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d at pp. 638-639, fn. 22; *Steve P. Rados, Inc.* v. *Occupational Safety & Health Appeals Bd.,* 89 Cal.App.3d 590, 594-595 [152 Cal.Rptr. 510]; cf. *Universal Camera Corp.* v. *Labor Bd.,* 340 U.S. 474, 478-490 [95 L.Ed. 456, 462-469, 71 S.Ct. 456].)

estopped to raise the statute of limitations as a defense herein." (Italics added.)

It is true that in the last substantive paragraph of Board's opinion and order denying defendants' petition for reconsideration it is stated: "Further, the record in this case indicates that applicant was subjected to intimidation and warnings by defendant employer discouraging applicant from filing a worker's compensation claim and that applicant's counsel led applicant to believe that defendant employer's assistance was necessary in applicant's third party case, thereby discouraging applicant from filing a worker's compensation claim until after the statutory period had passed." However, it is abundantly clear that the decision after reconsideration was not based on such a finding,[1] and it is reasonably clear that the same is true of the order denying defendant's petition for reconsideration. Significantly, in its response to the petition for writ of review, Board makes no attempt to uphold its decision on the basis of such a finding.

 Secondly, no such finding would be supported by substantial evidence based on the entire record. All parties are agreed that the trial judge's summary of the evidence "adequately sets forth the facts of the accident and the matters that transpired after the accident pertaining to the issue of [the] statute of limitations . . . ." The trial judge's summary of the evidence was itself well summarized by the trial judge in his report and recommendation on applicant's petition for reconsideration. It reads in pertinent part: "The applicant testified that, from her experience working in an attorney's office, she was aware that she could file a compensation [application] and that she had one year within which to file it. She hired an attorney, William Jones, to represent her, as she had a civil case against the office building. He, she stated, did not want to file a compensation case against her employer, as he told her this would create

---

[1] In rendering a decision after granting reconsideration Board is required to specify in detail the evidence relied upon in its decision. (Lab. Code, § 5908.5; *Evans* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 753, 755 [68 Cal.Rptr. 825, 441 P.2d 633]; see *LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d at p. 633.) Obviously, the evidence specified by Board must constitute substantial evidence on the entire record to support its decision. (Lab. Code, § 5952; *Lamb* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at pp. 280-281, and cases there cited.) The evidence referred to by Board in its opinion and order after reconsideration consisted entirely of excerpts from the summary of evidence made by the trial judge, and as hereafter discussed, would not support a finding that applicant's delay in filing was caused by any threats or intimidation by defendants.

a conflict. Attorney Jones apparently had other cases with her employer. In any event, because of this advice, she relied on him and did not file.[5]

"Applicant's former husband, Samuel Esposito, testified that the defendant employer had advised him that he would fight a compensation claim; that Attorney Jones had told him he would not handle a compensation case for the applicant.[6]

"Michael Hurwitz, applicant's employer, testified that he did not threaten to withhold his testimony in any civil suit as he had no testimony to give.[7]

---

[5]The trial judge summarized applicant's testimony as follows:

"On May 2nd she stayed after work until approximately 9:00 p.m. typing a term paper for her husband. She did this with the permission of her employer. In coming down the common stairway she fell and injured herself. The building does have an elevator but it shuts down at 7:00 p.m. She continued working for the defendant for approximately two weeks and then resigned over a dispute she had with her employer of her going to see the doctor. Her employer called at home. She did not speak to him. He spoke to her husband. She has a third party case in which she is represented by Tom Anderson. In her third party case she first hired an attorney, Jack Jones. He told her that he would not procede [sic] in the civil case if she filed a compensation claim. He said that this would create a conflict. Attorney Jones had other cases with the defendant employer. She knew she could file a compensation case. She knew this within two or three months of her being hurt. However, as a result of Attorney Jones' advice she did not file. She did file in April of this year. She was off work until February 4, 1977 and then went to work as a legal secretary and worked until July 1, 1977. She has not worked as Dr. Moreale advised her not to work. She is still receiving treatment at UCLA Medical Center. She has received bio-feedback.

"CROSS-EXAMINATION. Working for the defendant, she did some compensation work. The defendant told her on these cases that she had handled that it was important to get the date of injury as we have one year to file. She knew Attorney Jones. He was a good friend and she wanted him to represent her and so she relied on him.

"REDIRECT: . . . She did not come to the conclusion she did not have a compensation case because she was doing some personal typing."

[6]The trial judge summarized the testimony of applicant's husband, Samuel Esposito, as follows:

"He was married to the applicant in May of 1975. He had two telephone conversations with the defendant. The first one, the defendant was concerned about her condition and then the second one, Mr. Flickinger called and then Mr. Hurwitz came on the other line and said they better not file as he was going to fight any compensation case. He recalls a conference with a Jack Jones at their home. It was in October or November, 1975. The compensation aspect of the wife's case was discussed. Jones advised him that he would not handle the compensation because of his connection with the defendant. Jones also felt that the defendant's assistance was necessary in the civil case.

"CROSS-EXAMINATION: He believes his wife first called Jones on the phone after she had left the defendant's employ. He does not believe Jones ever advised her not to file a compensation case."

[7]The trial judge summarized the testimony of Michael Hurwitz as follows: "He is the applicant's employer. She stayed late at his permission to finish the term paper. He never indicated to the applicant or the husband that he did not want them to file a

"William E. Jones, the attorney, testified, and denied that he said anything about applicant having a claim against the defendant; he did talk with the defendant and was advised that if he filed a compensation case not to expect help. However, there was no reason, he stated, that he needed the defendant's help. He believed the applicant did not want to file a compensation case. There was no reason why he could not have represented her and made a compensation claim.[8] "

The trial judge concluded: "Applicant was furnished no benefits. She had one year to file her compensation application. She waited from May 2, 1975 until April 11, 1977, a period of almost two years. There was nothing the defendant did that she relied on. She was aware of her rights. She had counsel representing her and apparently relied upon his advice."

██ Even if all credibility doubts are resolved in favor of applicant,[9] there is no substantial evidence that applicant's delay in filing her

---

compensation case. The applicant was terminated because she came in late after going to the doctor. He wanted her to call him under such circumstances. He did not threaten to withhold his testimony in the civil suit. He had no testimony to give."

[8]The trial judge summarized the testimony of William Jones as follows:
"The applicant consulted him as an attorney. At that time he was associated with Jess Barnett. A civil action was filed. He has a problem testifying as he cannot find his file. He therefore has to recall everything. He said nothing about she [sic] having no claim against Mr. Hurwitz. He recalls that he spoke with her on the phone and then came to their house. He does not recall that he wanted to see if the defendant would object to his representing her.
"CROSS-EXAMINATION: At one time he represented the defendant in a domestic matter. He had a couple of large cases that the defendant had consulted with him on. He recognized there was some hostility between the applicant's family and the defendant. The defendant told him not to worry about taking the lawsuit. The defendant told him that if they filed a compensation case to not expect help. He did not know what he meant by that. There was no reason why he needed the defendant's cooperation. He believes that it was the applicant that did not want to sue the defendant. He does not recall giving her any opinion as to whether she should or should not have filed a case. He cannot think of any reason why he could not have represented her and made a compensation claim."

[9]We do not find it necessary to reach the question of what effect should be given the credibility assessments made by the trial judge in applying the "substantial evidence on the entire record" standard. This question was discussed by the United States Supreme Court in *Universal Camera Corp.* v. *Labor Bd., supra,* 340 U.S. 474, perhaps the leading case dealing with the "substantial evidence on the entire record" standard. In holding that the findings of the hearing officer in a National Labor Relations Board proceeding may be considered by the reviewing court in its determination whether the board's determination is supported by substantial evidence on the entire record, the court said: "We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case

application for workers' compensation benefits resulted from any intimidation or warnings on the part of her employer. The only evidence of any statements of any kind on the part of the employer is found in the testimony of Samuel Esposito and attorney Jones. Mr. Esposito testified that in a telephone conversation between Mr. Hurwitz and him, Mr. Hurwitz had stated to him that he would resist any workers' compensation claim by applicant on the ground that her injury did not result from her employment but from her staying in the office to type a term paper for her husband. Mr. Esposito also testified that Mr. Hurwitz also said he "would be of no other assistance in the other case against the building."[10] Attorney Jones testified that Mr. Hurwitz said two things to him: "not to worry about taking the lawsuit"; and "that if they filed a compensation case[,] to not expect help."[11] (See fn. 8, *ante.*)

The only two statements by Mr. Hurwitz that could possibly be deemed intimidating or threatening were: (1) that he would resist a workers' compensation claim; and (2) that if applicant filed a workers'

---

has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case." (340 U.S. at p. 496 [95 L.Ed. at p. 472]. See also *Penasquitos Village, Inc.* v. *N.L.R.B.*, 565 F.2d 1074, 1078.)

Under the same standard of review our state courts have held with respect to at least some factual questions that "[w]hen a referee's finding . . . is supported by solid, credible evidence, it is to be accorded great weight by the Board and should be rejected only on the basis of contrary evidence of considerable substantiality." (*Lamb* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at p. 281; *Garza* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d at pp. 318-319; *Robert G. Beloud, Inc.* v. *Workers' Comp. Appeals Bd.,* 50 Cal.App.3d 729, 737 [123 Cal.Rptr. 750]; *Greenberg* v. *Workmen's Comp. Appeals Bd.,* 37 Cal.App.3d 792, 799 [112 Cal.Rptr. 626].)

[10]Although, as indicated, all parties have agreed that the trial judge's summary of the evidence is accurate and adequate, we note that Mr. Esposito's testimony about Mr. Hurwitz' saying he would be of no other assistance in the third party action was not included in the trial judge's summary. Apparently, the trial judge was not much impressed with Mr. Esposito's testimony on this point. When Mr. Esposito was asked whether Mr. Hurwitz "elaborate[d] at all as to what he meant by being of no assistance in the other claim against the building," he answered: "He didn't really elaborate, no, just indicated he wouldn't help her. Apparently, there was an opinion—well, I'm not sure. I really don't know. That was all he elaborated on, that he would be of no assistance and the main brunt of the conversation was that he was going to fight the workmen's comp case on the basis she was typing a term paper for me."

Applicant testified that it was Attorney Jones who told her that if she filed a workers' compensation claim Mr. Hurwitz "probably would not give [her] any aid in [her] other case" and that that was one of the reasons he advised her to forgo any workers' compensation claim.

[11]Attorney Jones' testimony that it was to him that Mr. Hurwitz made the statement about not expecting help is corroborated by applicant's testimony that she received this information from Attorney Jones. (See fn. 10, *ante.*)

compensation claim, she could expect no help from him in the third party action. The first cannot possibly be considered any kind of improper threat. It conveyed no more than a rejection of any claim that applicant's injury was incurred in her employment and notice that if applicant felt she was entitled to any workers' compensation benefits, she would have to take appropriate legal action to secure them. That very same information must be given an employee under the notice requirements of the administrative director by an employer who rejects a claim for benefits.

Hurwitz' statement to Mr. Esposito, if in fact it was made to Mr. Esposito (see fns. 10 and 11, *ante*), that he would not assist applicant in her third party action, while perhaps not admirable, was not unlawful nor sinister. It was not as if applicant had an open and shut workers' compensation claim; there was a serious question as to whether or not her injury arose out of and was incurred in the course of her employment. Mr. Hurwitz was under no legal duty voluntarily to assist her in the third party action. He could, of course, be subpoenaed to appear and testify if his testimony were wanted.

Turning to the evidence of what Attorney Jones said and did, we first observe that applicant and Board, too, to the extent that it referred to Jones' actions, overlooked a rather important circumstance. There is no evidence whatever that in doing or saying anything he did Jones was acting as an agent for the employer or that he and the employer were engaged in a conspiratorial effort to prevent applicant, contrary to her wishes, from filing a workers' compensation claim. On the contrary, the evidence was that Mr. Jones was applicant's good friend.

If, as applicant testified, Jones informed her that he had some cases in which Mr. Hurwitz was involved and that commencement of a workers' compensation proceeding against Mr. Hurwitz might put him in a position of conflict, his doing so was commendable, not opprobious. Neither was Mr. Jones blameworthy for relating to applicant, who was then his client, or his prospective client, the statement made, if it was made, by Mr. Hurwitz that they could expect no help in the third party action. Applicant was entitled to be fully informed, and Attorney Jones was fully privileged to discuss with her his reasons for his tactical suggestions. Finally, if, as applicant claims, Attorney Jones indicated to her that it would be helpful to have Mr. Hurwitz' cooperation in the third party action, that evaluation could not be said to be wholly without foundation. In addition to being able to testify about giving applicant permission to remain at the office after normal closing hours, Mr.

Hurwitz might well be able to testify about applicant's demeanor evidencing pain or discomfort and her disability during the approximately two-week period she worked for him following the accident. If as applicant asserted the building stairway was unlighted, she had a promising third party tort action, and it cannot be said as a matter of law that a decision to pursue that remedy exclusively and thereby avoid whatever complications a workers' compensation claim would involve was unsound advice. In any event, if Jones misadvised applicant, that is a matter between her and him.

Perhaps most importantly, applicant did not testify that her delay in filing was in any way caused by intimidation or threats on the part of her employer. The summary of her testimony contains not a single reference to any threat, intimidating statement or other communication to her from Mr. Hurwitz (see fn. 5, *ante*), and her letter of resignation demonstrates well nigh conclusively that she was not in the least intimidated by him.

Applicant's testimony affirmatively establishes that she wanted Attorney Jones to represent her in the third party action and that, relying upon his reasoning and advice, she made a deliberate choice not to pursue her possible workers' compensation remedy but rather to pursue exclusively her apparently viable tort action. Applicant testified that several months after the telephone conversations between her husband and Mr. Hurwitz, she sought Mr. Jones' advice. He came to her home where he had a conversation with her and her husband in which Jones stated, "that he had not been [*sic*] able to proceed with [the] civil case in the event [she] were to file a workmen's compensation case against Mr. Hurwitz." Applicant was then asked by her attorney: "Did he say why?" After replying in the affirmative, applicant explained: "Well, it would present —I believe this is what he said—a conflict of interest. That was number one. Number two, Mr. Hurwitz was rather adamant about giving me any assistance on my other case and probably would not give me any aid in my other case." The next question was: "So then it was his advice that you waive your comp claim in order to obtain the assistance of Mr. Hurwitz in your civil case?" Applicant responded: "And also to have Mr. Jones represent me." Finally, applicant was asked by her attorney: "As a result of the advice of Mr. Jones, then, you failed to file a workmen's compensation claim?" She answered: "Yes, I did." After several questions by the court to clarify applicant's testimony, her attorney again asked her: "And as a result of this advice [from Attorney Jones], then did you fail to file a worker's compensation claim until, I believe it's, April of this year?" Twice applicant responded: "Correct."

On cross-examination defendant's attorney asked applicant: "Well if you felt pressure . . . why didn't you change attorneys in respect to your civil action at that time?" Applicant responded: "I got to know Mr. Jones fairly well and he also became a good friend. I trusted him implicitly." She was then asked: "Although you felt pressured by what he [Jones] indicated to you about not filing a workmen's compensation claim?" She answered: "I felt Mr. Jones had my best interests at heart. If Mr. Jones advised me that I should not do it and I wanted him to represent me in my civil matter I would have. I think I knew that he knew what he was talking about. If he knew that he relied on Mr. Hurwitz' assistance for my civil matter, I would take his best council [sic], which I did." Applicant's testimony in this regard was corroborated by that of Mr. Esposito.

Turning to the estoppel question, Board's statement is representative of the position of respondents. It states: ". . . Board contends that the statute of limitations was tolled because petitioners failed to comply with their affirmative duty to give respondent Esposito notice of her workers' compensation rights as required by the *Reynolds* case. The Board's position is that *Reynolds* establishes an absolute requirement for notice on the part of a knowledgable employer except in those limited situations" which are excepted by statute or the regulations.

Respondents, and Board in particular, place great emphasis on the 1975 amendment to Labor Code section 5402 which added to the preexisting language of the section the following: "Upon receiving such knowledge [knowledge of an employee's injury for which he might be entitled to benefits], the employer shall notify the injured employee . . . that he may be entitled to benefits under this division. Such notice by the employer shall be within the time period and in the manner prescribed by the administrative director for such purpose. However, such notice shall not be required when the application for benefits has been filed on behalf of the injured employee, or in the case of death, his dependents."[12]

---

[12]Although no particular point is made of it by either respondent, we note that section 5402 is found in chapter 2 of part 4 of division 4 of the Labor Code entitled "Limitations of Proceedings." We also observe, however, that the first few sections within chapter 2, specifically sections 5400, 5401, 5403, and 5402 except for the addition made by the 1975 amendment, deal exclusively with the duty of an injured employee to give notice of injury to the employer and the effect of the failure to give such notice.

The complete text of section 5402 as amended reads: "Knowledge of such injury, obtained from any source, on the part of an employer, his managing agent, superintendent, foreman, or other person in authority, or knowledge of the assertion of a claim of injury sufficient to afford opportunity to the employer to make an investigation into the facts, is equivalent to service under Section 5400. Upon receiving such knowledge, the employer shall notify the injured employee, or in the case of death his dependents, that

(Stats. 1975, ch. 1099, § 2, pp. 2670-2671.) Labor Code section 138.3 which was added to the code by the same statute that amended section 5402 (Stats. 1975, ch. 1099, § 1, p. 2670) provides: "The administrative director shall, with respect to all injuries, prescribe, pursuant to Section 5402, reasonable rules and regulations requiring the employer to serve notice on the injured employee that he may be entitled to benefits under this division." Labor Code section 138.4 provides in relevant part: "The administrative director shall, with respect to injuries involving loss of time: [¶] (a) Prescribe reasonable rules and regulations for the serving on the employee of reports dealing with the payment or nonpayment of benefits with copies to the administrative director."

Pursuant to this statutory authority, the administrative director has promulgated rules and regulations concerning the giving of notices, which are found in various sections of title 8 of the California Administrative Code. Section 9816 provides that in every case in which the employer has notice or knowledge of an injury that requires hospitalization or results in disability of more than three days he shall give the injured employee notice of payment or nonpayment of benefits and of termination of benefits. Section 9817 sets out the time period in which the employer is to give notice. Subdivision (d) of section 9817 reads: "Notice of rejection of liability shall be sent upon making the decision to deny liability." Section 9854 specifies the information that is to be contained in a notice of nonpayment of benefits which includes: "A statement that the employee . . . may contact the Information and Assistance Officer at the Division of Industrial Accidents . . . or . . . may consult an attorney of his or her choice." Section 9859 specifies the information that must be set forth in a notice of rejection of claim or denial of benefits including: "[a]n unequivocal statement that the claim or benefit is being denied and an explanation of the reason or reasons for denial." Subdivision 3 of section 9859 reads: "The following paragraph is mandatory: 'If you are not satisfied with this explanation, please contact the Information and Assistance Officer at the (city) _____ office of the State Division of Industrial Accidents [setting forth his or her name, address and telephone number], and there is no charge for this service, or you may consult an attorney of your choice.'" Section 9880 provides that an employer "upon receiving knowledge of an injury . . . as defined in Labor Code section 3208, or notice or knowledge of a claimed

---

he may be entitled to benefits under this division. Such notice by the employer shall be within the time period and in the manner prescribed by the administrative director for such purpose. However, such notice shall not be required when the application for benefits has been filed on behalf of the injured employee, or in the case of death, his dependents."

injury sufficient to afford an opportunity to make an investigation into the facts, shall within 5 working days advise the injured employee . . . of the benefits to which the employee . . . may be entitled . . . . The document shall also contain information as to the services of Rehabilitation Consultants and Information and Assistance Officers located in the offices of the Division of Industrial Accidents, Workers' Compensation Appeals Board, and of the services of the Workers' Compensation Appeals Board as final arbiter of claims." Section 9822 specifies a number of situations not here involved in which the various notices are not required.[13]

The language of the statutes and rules and regulations is mandatory, and respondents are correct that the notices specified are mandatorily required to be given in the circumstances enumerated in the statutes and regulations unless specifically excepted. However, that conclusion does not answer the question presented. The question presented is what is the effect of an employer's *failure to give one or more of the required notices.* Applicant and Board contend that regardless of the other facts and circumstances, the consequence is that the employer is estopped to assert the statute of limitations. Their position is that the actual knowledge of the employee and the actual cause for the delay in filing are immaterial. In effect, they contend that the statute of limitations simply does not commence to run until the required notice is given.

Respondents rely primarily on *Reynolds* v. *Workmen's Comp. Appeals Bd., supra,* 12 Cal.3d 726. In that case an employee suffered a heart attack while at work. The employer was aware of that fact and indeed had an ambulance called to take the employee to the hospital. Because of his heart attack the employee was unable to work for approximately one year. During that year he received unemployment disability compensation and paid all of his own medical expenses. The employee apparently failed to recognize he had a colorable workers' compensation claim until three years after suffering the heart attack and after the applicable statute

---

[13]Section 9822 reads: "The notices required by Section 9817 will not apply in cases where:

"(a) A compromise and release agreement has been filed with the Workmen's Compensation Appeals Board; or

"(b) An application has been filed with the Workmen's Compensation Appeals Board, except that a statement of account of benefits paid on the form contained in Section 9832 (Form DIA 500) shall be required:

"(1) For temporary disability indemnity paid following a final order or award of the Appeals Board terminating temporary disability; and

"(2) *For* permanent disability indemnity paid following final payment of an award for permanent disability."

of limitations had run. The Board ruled that the claim was barred by the statute of limitations.

The Supreme Court annulled the Board's decision. Noting that the idea that he might be entitled to workers' compensation benefits "had apparently not occurred to petitioner" until nearly three years after his heart attack when it was suggested to him by a relative (12 Cal.3d at p. 728) the court held his workers' compensation claim was not barred by the statute of limitations because the employer had failed to notify him that there was a possibility he would be entitled to workers' compensation benefits or to send him an unequivocal statement that it denied he was entitled to benefits as was required by the rules and regulations issued by the administrative director. (*Id.*) In stating its conclusion, however, the court said: "As a result, *the statute of limitations had not commenced to run at the time petitioner filed his claim.*" (*Id.*) (Italics added.)

Similar language is found in *Buena Ventura Gardens* v. *Workers' Comp. Appeals Bd.*, 49 Cal.App.3d 410 [122 Cal.Rptr. 714], which followed *Reynolds.* In that case the employee was a housekeeper in an apartment complex. Her work required strenuous physical labor. As a result of her work she began experiencing pain in her chest and legs as well as shortness of breath. Her employer was aware she was experiencing these problems and instructed her husband to take her to a doctor. The employer, however, failed to notify her of her potential right to workers' compensation benefits in accordance with the statutory provisions and administrative rules. Eventually she filed a workers' compensation claim after expiration of the period prescribed by the applicable statute of limitations.

In holding that the employee's workers' compensation claim was not barred by the statute of limitations the court stated: "[Employer] had a duty to either give written notice of denial of benefits under Administrative Code section 9859 or written notice that a possible claim might exist under Administrative Code section 9816 *in order to commence the running of the statute of limitations.* [Employer] did neither. It may not now argue that the statute of limitations ran while [employee] was ignorant of her rights of which it had a duty to advise her. . . ." (49 Cal.App.3d at p. 416; italics added.)

Similar language is found in *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.*, 19 Cal.3d 329 [137 Cal.Rptr. 878, 562 P.2d 1037], in which the statute of limitations was involved, but the question before the

court was somewhat different. In the opening paragraph in which the court summarized its holding, it said: "Concluding, as we do, that the one-year period commences to run when the potential claimant is notified that the employer and its compensation carrier reject liability under the Act, we will affirm the decision of the Workers' Compensation Appeals Board . . . which held the claim was barred because it was filed more than one year after such notice was given." (19 Cal.3d at pp. 331-332.) We observe, however, that in the substantive portion of the opinion the court twice expressly stated its reasoning to be that the statute of limitations began to run "no later" than the date on which notice was given. (19 Cal.3d at pp. 335, 336.)

Apparently it is upon the language quoted above from these opinions that respondents rely. In so doing they misinterpret these precedents.

Notwithstanding the language used, we are unable to accept that the courts literally meant that the statute of limitations does not commence to run until the notice prescribed by the administrative director has been given. The Workers' Compensation Act specifies in unusual detail the precise events which commence the running of the statute of limitations. (See Lab. Code, §§ 5404-5412.) In the case at bench since no occupational disease or cumulative injury is involved and no benefits were furnished, the applicable statutory provision prescribes that the period of limitations commences on "[t]he date of injury." (Lab. Code, § 5405, subd. (a).) Although notice to the injured employee is specifically required by statute (Lab. Code, § 5402) and the administrative director is authorized by statute to prescribe rules and regulations concerning the giving of notice (Lab. Code, §§ 138.3, 138.4), the statutes neither provide nor suggest that the event which commences the running of the statute of limitations is other than that prescribed in the applicable statutory provision. Neither the administrative director nor a court is at liberty to disregard the event specified by the statute and designate a different event as commencing the running of the period of limitations. And we decline to ascribe to the *Reynolds* and *Buena Ventura* courts the intention of doing that.

■ However, the doctrine of equitable estoppel or estoppel in pais is an accepted jurisprudential technique of long standing for avoiding the effect of the running of the statute of limitations when the delay in instituting proceedings has resulted from some breach of duty or other conduct on the part of the party asserting the statute. And it has frequently been applied in workers' compensation proceedings. (*Benner*

v. *Industrial Acc. Com.,* 26 Cal.2d 346, 349-350 [159 P.2d 24]; *Nolan v. Workers' Comp. Appeals Bd.,* 70 Cal.App.3d 122, 129-130 [138 Cal.Rptr. 561]; *Industrial Indem. Co. v. Ind. Acc. Com.,* 115 Cal.App.2d 684, 689, 690 [252 P.2d 649]; see *American Can Co. v. Industrial Acc. Com.,* 204 Cal.App.2d 276, 278 [22 Cal.Rptr. 164].) It is our conclusion that the true basis of the *Reynolds* and *Buena Ventura* decisions was equitable estoppel. ■ The rule they establish is that when an employer has the requisite notice or knowledge of an employee's injury as to which there is a reasonable possibility the employee may be entitled to workers' compensation benefits, the employer has a duty to notify the employee of the potential right to benefits, and if the employer fails to do so, and if as a consequence the employee fails to file an application for workers' compensation benefits until after the applicable period of limitations has expired, the employer is estopped to assert the statute of limitations for a period of time equal to the delay resulting from the failure to give the required notice. (Also cf. *Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd., supra,* 19 Cal.3d at p. 336.) A more precise use of language by the courts should have indicated not that the statutory period had not commenced to run, but that the employers were estopped to assert it had run or, perhaps, commenced to run.

Our conclusion that the *Reynolds* and *Buena Ventura* decisions are founded on the doctrine of equitable estoppel derives not only from our belief that that is the only sound legal basis upon which the decisions could have been predicated, but, also, from a number of other considerations. ■ The precedential import of a case cannot be accurately determined without reference to its facts. In both *Reynolds* and *Buena Ventura* the employees were ignorant of their potential rights under the workers' compensation law, and in each case the court expressly took note of and placed reliance upon that fact. (See 12 Cal.3d at pp. 729, 728; 49 Cal.App.3d at p. 416.)

The rationale of the *Reynolds* case is found in its statement of the purpose of the administrative director's rules and regulations concerning notice: "The clear purpose of these rules is to protect and preserve the rights of an injured employee *who may be ignorant of the procedures or, indeed, the very existence of the workmen's compensation law.* Since the employer is generally in a better position to be aware of the employee's rights, it is proper that he should be charged with responsibility of notifying the employee, *under circumstances such as those existing here* [e.g., where the employee was ignorant of the possible industrial nature of

his injury], that there is a possibility he may have a claim for workmen's compensation benefits." (12 Cal.3d at p. 729; italics added.)

Perhaps even more conclusively, the only precedent cited by the court in *Reynolds* for its holding that the employer was not permitted to raise the defense of the statute of limitations was *Mihesuah* v. *Workmen's Comp. Appeals Bd.*, 29 Cal.App.3d 337, 340-341 [105 Cal.Rptr. 561]. The *Mihesuah* decision at the pages cited by the *Reynolds* court commences with the heading "ESTOPPEL." Beneath the heading, in dicta, the court indicated that in all probability its decision that the applicant's claim was not barred by the statute of limitations could also be reached on the basis of equitable estoppel. (29 Cal.App.3d at pp. 340-341.)

In *Kaiser Foundation Hospitals* v. *Workmen's Comp. Appeals Bd., supra*, 19 Cal.3d at page 335, the Supreme Court clearly indicated its conclusion that the *Reynolds* decision was based on estoppel. It said: "Finding the employee's claim timely filed for this reason, the *Mihesuah* court further held that it was not required to consider the alternative argument (later accepted by us in *Reynolds* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 726 [117 Cal.Rptr. 79, 527 P.2d 631]) that the employer was *estopped* from asserting the statute of limitations because of its failure to notify the employee of the fact that the employer considered the injury as nonindustrial." (Orig. italics.)

We note also that the Board itself both in its opinions and decisions at issue in the case at bench and in its response to the petition for writ of review constantly refers to the *Reynolds* decision as having been that the employer was estopped to assert the statute of limitations.

Having identified the legal basis for the *Reynolds* and *Buena Ventura* decisions as the doctrine of equitable estoppel, the resolution of the dispute in the case at bench is not difficult. ■ It is universally recognized that prerequisites to applicability of the doctrine of equitable estoppel are that the party asserting the estoppel must have been ignorant of the true facts and must have relied upon the words or conduct of the adverse party to his or her detriment. (*Neff* v. *New York Life Ins. Co.*, 30 Cal.2d 165, 172 [180 P.2d 900, 171 A.L.R. 563]; *Tucker* v. *Watkins*, 251 Cal.App.2d 327, 333 [59 Cal.Rptr. 453]; *Banco Mercantil* v. *Sauls Inc.*, 140 Cal.App.2d 316, 325 [295 P.2d 55]; see Evid. Code, § 623; *City of Long Beach* v. *Mansell*, 3 Cal.3d 462, 488-489 [91 Cal.Rptr. 23, 476 P.2d 423]; *Driscoll* v. *City of Los Angeles*, 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; *Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.*, 54

Cal.2d 773, 778 [8 Cal.Rptr. 448, 356 P.2d 192], and cases there cited; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, pp. 5351-5352; cf. *American Can Co.* v. *Industrial Acc. Com.*, *supra*, 204 Cal.App.2d at p. 278.)

■ The evidence in the case at bench establishes that applicant was aware from the beginning that her injury might be job related and that she might be entitled to workers' compensation benefits. Not later than two months after the date of injury, she was aware that to seek workers' compensation benefits she must institute proceedings within one year after the date of injury. She was fully aware that her employer rejected and would resist any claim that her injury arose out of and in the course of her employment. She engaged an attorney to file a third party tort action on her behalf and discussed with her attorney the workers' compensation aspects of the case. Based on the tactical evaluations and advice of her attorney, who was also her friend, applicant made a deliberate decision not to file an application for workers' compensation benefits but, rather, exclusively to pursue her third party tort remedy.

Thus applicant was not ignorant of the true facts and her delay in filing an application for adjudication of claim was not caused by the employer's failure to give the required notice or notices. The doctrine of equitable estoppel is inapplicable.

The decisions of the Workers' Compensation Appeals Board are annulled.

Tamura, Acting P. J., and McDaniel, J., concurred.