[Civ. No. 58878. Second Dist., Div. Four. Nov. 6, 1980.]

FRANK MAPLES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
H. P. FOLEY et al., Respondents.

COUNSEL

Herreras & Spatafore and William A. Herreras for Petitioner.

Rowen, Swanson & Rose, Kenneth Rowen and Steven B. Simon for Respondents.

OPINION

WOODS, J.—Petitioner Frank Maples contends respondent Workers' Compensation Appeals Board (Board) erred in permitting respondent, insurance carrier for his employer, to claim an overpayment of temporary disability indemnity payments against petitioner's permanent

disability award. We agree and annul the allowance of the overpayment credit.

I

Petitioner Frank Maples (hereinafter also applicant) while employed on October 19, 1976, by H. P. Foley, insured by Eldorado Insurance Company (Eldorado), sustained injury to his back arising out of and occurring in the course of said employment. On July 26, 1977, the workers' compensation judge issued an award of temporary total disability for the period December 9, 1976, to the date of the award and continuing thereafter at the rate of $119 per week.

On November 14, 1977, Dr. Earle E. Crandall, M.D., a neurological surgeon, medically evaluated Maples on behalf of Eldorado and issued a report to Eldorado in which he found Maples to be permanent and stationary.[1] Dr. Crandall's report indicates it was dictated on November 14, 1977, transcribed on November 18, 1977, and a copy sent directly to both Eldorado and its attorneys. According to the "received stamp" on the report, the attorneys for Eldorado received it on November 23, 1977. This report was not filed with the Appeals Board nor served upon Maples until May 15, 1979.

Eldorado did, however, on September 18, 1978, promptly file with the Board and serve upon Maples a medical report from Dr. Crandall dated September 7, 1978, wherein Dr. Crandall expressed the opinion that Maples had been permanent and stationary since November 14, 1977, the date of his prior examination and report.

Reporting on behalf of Maples was J. H. Abramson, M.D., who examined Maples on October 23, 1978. In his report of November 1, 1978, Dr. Abramson declared Maples permanent and stationary if no further medical treatment were rendered. It is of note that Dr. Abramson states that among the medical reports and records he reviewed were Dr. Crandall's reports of November 14, 1977, and September 7, 1978.

Eldorado paid Maples temporary disability indemnity at the rate of $119 per week from December 9, 1976, through August 9, 1978, to-

---

[1] "In general, temporary disability indemnity is payable during the injured worker's healing period from the injury until the worker has recovered sufficiently to return to work, or until his/her condition reaches a permanent and stationary status." (*Huston* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 868 [157 Cal.Rptr. 355].)

gether with permanent disability advances of $770. Apparently Eldorado did not immediately advise Maples of the reason for the termination of temporary disability benefits in August 1978. On November 6, 1978, Maples filed a declaration of readiness to proceed, which raised all issues including penalty pursuant to Labor Code section 5814[2] for failure to pay benefits.

On December 11, 1978, the parties stipulated to refer the matter to an agreed medical examiner, W. Gordon Smith, M.D.

Dr. Smith reported on January 19, 1979, that Maples became permanent and stationary on or about November 5, 1978, and his permanent disability was a restriction to semisedentary work. When cross-examined on August 14, 1979, Dr. Smith testified that if Maples had testified that he had little improvement, if any, since Dr. Crandall's examination, then he would agree with Dr. Crandall that Maples was permanent and stationary on November 14, 1977. Maples had so testified.

It was not until April 10, 1979, that Eldorado finally filed a formal petition to terminate liability for temporary disability as required by WCAB Rules of Practice and Procedure (hereinafter WCAB Rules) sections 10462[3] and 10464.[4]

---

[2]Labor Code section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

[3]WCAB Rules section 10462 provides: "Petition to Terminate Liability Must Be Filed. A petition to terminate liability for continuing disability payments or other compensation benefits under a findings and award, decision or order of the Appeals Board or referee must be filed within ten (10) days of the termination of disability payments or the furnishing of other compensation benefits."

[4]WCAB Rules section 10464 provides: "Petition to Terminate, Requirements of. Petition to terminate liability for temporary total disability shall conform substantially to the suggested form set forth below at Rule 10468 and shall show:

"(a)   Correct title and date of filing of the prior order or decision, liability under which is sought to be terminated;

"(b)   The amount of disability indemnity which has been paid;

"(c)   The date to which payment has been made;

"(d)   The date upon which it is claimed that liability terminated;

"(e)   The grounds on which it is claimed liability should be terminated;

"(f)   Whether or not permanent disability indemnity is being advanced, and if so

When a hearing was held, Maples claimed entitlement to temporary disability indemnity through November 5, 1978, and a 10 percent penalty for failure to pay benefits. Eldorado claimed Maples' temporary disability ended on November 14, 1977, and that it was entitled to a credit toward permanent disability indemnity for the amount of temporary disability indemnity paid after November 14, 1977. Maples countered that Eldorado was estopped to claim such credit.

On December 12, 1979, the trial judge found temporary disability ended as of November 14, 1977, and that Eldorado was entitled to a credit against permanent disability indemnity in the amount of the resulting temporary disability indemnity overpayment. A 10 percent penalty was assessed against Eldorado for failure to make sufficient permanent disability advances. Permanent disability was found to be 76 percent, equivalent to $30,047.50 payable at $70 per week for 429.25 weeks and thereafter a life pension of $25.85 per week. The permanent disability was made payable commencing November 18, 1977.

Explaining his refusal to estop Eldorado to claim credit for its overpayment of temporary disability, the judge stated in his report and recommendation on petition for reconsideration: "Insofar as the issue of estoppel is concerned, the decision to allow credit to [Eldorado] subsequent to Dr. Crandall's report of November 14, 1977 was based upon substantial evidence in that Dr. Crandall, in his report of November 14, 1977, was of the opinion that the applicant was permanent and stationary at said time; Dr. Smith, the Agreed Medical Examiner, concurred that this is probable; the applicant's testimony was also to the effect that his condition had changed little, if any, subsequent to November 14, 1977. I fail to see where the applicant has been prejudiced by the finding of temporary disability terminating on November 14, 1977 in that [Eldorado] continued to pay temporary disability benefits through August 9, 1978 with additional advances on permanent disability. The applicant's remedy for the failure of [Eldorado] to continue further

---

the approximate date to which such indemnity will be paid;

"(g) Whether or not according to petitioner's information applicant is presently working;

"(h) Proof of service upon the opposing parties; and

"(i) That all medical reports in the possession of petitioner, his attorneys or agents, and not previously served and filed, accompany the petition.

"(j) That an order terminating liability will issue unless objection thereto is made on behalf of the employee within fourteen days after service of the petition, such information to appear in underlined capital letters on the petition."

payments is to raise the 10% penalty and obtain same which was accomplished in this case...."[5]

Relying upon the judge's analysis, the Board denied Maples' request to reconsider the issue of credit.[6]

## II

The issue herein is to what extent, if at all, should Eldorado be estopped to claim temporary disability ended as of November 14, 1977, or to claim a credit for a temporary disability indemnity overpayment.

## III

When the Board issues a continuing award of temporary disability, it is anticipated that eventually the injured worker's entitlement to temporary disability indemnity will terminate when he either becomes permanent and stationary or improves sufficiently to return to work. (*County of Los Angeles* v. *Workers' Comp. Appeals Bd.* (*King*) (1980) 104 Cal.App.3d 933, 938-939 [168 Cal.Rptr. 789].) The filing of a petition to terminate by the employer notifies the injured worker of termination of temporary disability indemnity and the employer's claimed basis therefor. The injured worker is given the opportunity to object to the petition to terminate. (WCAB Rules, § 10466.) Upon such timely objection and where it appears the employee may not be working and may not be receiving disability indemnity, the petition to terminate is set for hearing on a priority basis. If complete disposition of the issue cannot be made at such hearing, the Board may issue an interim order either directing continuance or termination of temporary disability indemnity. (WCAB Rules, § 10466; Cal. Workmen's Compensation Practice (Cont.Ed.Bar Supp. 1980) § 12.18, pp. 132-134.)

The WCAB Rules thus seek to have *prompt* resolution of termination of temporary disability for the protection of both the injured worker and the employer, while at the same time maintaining the integrity of the Board's continuing award of temporary disability. These procedures

[5]Eldorado does not here contest the award of the penalty. Accordingly, we need not comment upon the propriety of the penalty.

[6]The Board did grant reconsideration to remand the question of attorneys' fees to the trial level.

seek to avoid exactly what has happened here—unilateral termination of temporary disability indemnity without the injured worker or the Board being told why; delayed hearing on the issue; claims of substantial overpayments of temporary disability; and substantial periods of time when the injured worker receives neither temporary nor permanent disability indemnity.

We are cognizant that, without negligence on the part of the employer or his carrier, overpayments of temporary disability indemnity made under a continuing award of temporary disability can occur. There is an understandable brief delay between the physician's examination of the injured worker and the receipt of the physician's written report that the injured worker has either reached permanent and stationary status or can return to work. Temporary disability overpayments also result from the fact that indemnity must be made for "one week in advance as wages." (Lab. Code, § 4650; see *Huston v. Workers' Comp. Appeals Bd., supra*, 95 Cal.App.3d at pp. 870-871.) Such resulting overpayments of temporary disability indemnity are typically small and do not result in any significant interruption of benefits. Equity favors the allowance of such credit against permanent disability indemnity. (*Cordes v. General Dynamics-Astronautics* (1966) 31 Cal.Comp.Cases 429.) The situation here, however, is dramatically different.

Eldorado has violated the provisions of the Labor Code and the WCAB Rules in two separate respects. First, Eldorado failed to comply with the requirements of WCAB Rules sections 10608 and 10615[7] for the timely filing with the Board and service upon Maples of Dr. Cran-

---

[7]WCAB Rules section 10608 provides: "Physicians' Reports. A Declaration of Readiness to Proceed filed by any party shall be accompanied by copies of the signed medical reports of all physicians which relate to the proceedings and which declarant has in his possession or under his control.

"Within ten (10) days after service of the Declaration of Readiness to Proceed, all other parties shall file with the board copies of the signed reports of all physicians which relate to the proceedings and which they have in their possession or under their control.

"Copies of such reports shall be served on all parties at the time of filing.

"After filing of an application it shall be the duty of all parties to serve copies of all medical reports in their possession or under their control upon opposing parties upon request made by opposing parties."

WCAB Rules section 10615 provides in part: "Continuing Duty to File. All physicians' reports acquired by any of the parties subsequent to the time specified in Rule 10608 and during the pendency of the particular phase of the proceeding shall, within 5 days of receipt, be sent to the Appeals Board and copies served as provided in Rule 10608."

dall's medical report of November 14, 1977.[8] Eldorado's counsel, who received the report on November 23, 1977, has failed to explain why it was not timely filed and served. Secondly, Eldorado failed properly to comply with Labor Code section 4651.1 and WCAB Rules sections 10462 and 10464 and file a petition to terminate temporary disability indemnity within 10 days of the cessation of temporary disability indemnity payments. The judge's award of July 26, 1977, granting temporary total disability on a continuing basis did not expressly order the filing of a petition to terminate. However, WCAB Rules sections 10462 and 10464 require such petition to have been filed.

Eldorado's violation of these provisions is a serious matter. The full disclosure of medical reports as required by WCAB Rules is essential to the expeditious determination of the controversies submitted to the Board. (*In re Alleged Contempt of State Compensation Insurance Fund* (1975) 40 Cal.Comp.Cases 674, 676-678.)

Failure of the employer (or his carrier) promptly to file the petition to terminate and the supporting written medical evidence is extremely prejudicial to the injured worker.

First, such failure prevents the injured worker from obtaining contemporaneous rebuttal medical evidence to the employer's physician. When not advised promptly of the medical basis of the termination benefits, the eventual medical rebuttal to the employer's physician may be obtained several weeks or even months after the actual issuance of

---

[8]The Board could have declined to receive Dr. Crandall's report of November 14, 1977, into evidence pursuant to WCAB Rules section 10622, which provides: "Failure to Comply. The Appeals Board or referee may decline to receive in evidence, either at or subsequent to hearing, any report offered under the provisions of Labor Code Section 5703, Subdivision (a), by a party to a proceeding who has failed or refused to comply with the provisions of Rules 10600, 10608, 10615 and 10618, or any of them, or refuses or prevents inspection of X-rays as required by Rule 10620. A medical report shall not be refused admission into evidence at a hearing, solely upon the ground of a late filing, where examination was diligently sought and said report came into possession or control of the party offering it within the preceding 7 days.

"Disclosure, service and filing of all medical reports in the possession and control of every party to a proceeding except as otherwise expressly provided, and compliance with the rule on inspection is essential to, and required in, the expeditious determination of controversies.

"Where a wilful suppression of a medical report is shown to exist in violation of these rules, it shall be presumed that the findings, conclusions and opinions therein contained would be adverse, if produced. The remedies hereunder are cumulative to all others authorized by law."

the report by the employer's physician. Contemporaneously obtained medical reports help ensure that the physicians are examining the injured in nearly the same medical condition. When the injured worker's reporting physician performs his examination several months after the employer's physician, he is often reduced to educated speculation as to the injured worker's actual condition when the injured was earlier examined by the employer's physician. If the injured worker's physician also finds the injured worker permanent and stationary, it is often difficult for him to gauge whether the injured worker became permanent and stationary several months earlier, at the time of the evaluation by employer's physician, or some time later. At the very least, any long gap between the evaluation by the employer's physician and the injured's physician provides the employer with a basis to challenge the weight to be given the report by the injured's physician.

Thus, here, when Maples, on September 18, 1978, was served with Dr. Crandall's report of September 7, 1978, he was able promptly to obtain an examination by Dr. Abramson on October 23, 1978. However, as is readily apparent, there was nearly a one-year gap between Dr. Crandall's initial permanent and stationary evaluation of November 14, 1977, and Dr. Abramson's evaluation. This gap is entirely the result of Eldorado's failure to comply with appropriate WCAB procedures. It is this gap which fostered the litigation and issues presently before this court.

Secondly, the employer's failure to comply with applicable WCAB procedures and then its continuation of temporary disability indemnity, subjects the injured worker to a temporary disability overpayment claim against permanent disability payments.  ██  It must be remembered that temporary disability indemnity and permanent disability indemnity were intended by the Legislature to serve entirely different functions. Temporary disability indemnity serves as wage replacement during the injured worker's healing period for the industrial injury. (*County of Los Angeles* v. *Workers' Comp. Appeals Bd.* (*King*) *supra*, 104 Cal.App.3d 933, 938-939.) In contrast, permanent disability indemnity compensates for the residual handicap and/or impairment of function after maximum recovery from the effects of the industrial injury have been attained. (*Id.*, at p. 939.) Permanent disability serves to assist the injured worker in his adjustment in returning to the labor market. (1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) § 7.1.)  ██  Thus, in many instances the allowance of credit for a temporary disability overpayment against permanent disability indemni-

ty can be disruptive and in some instances totally destructive of the purpose of permanent disability indemnity. (See *Ryerson Concrete Co. v. Workmen's Comp. Appeals Bd.* (1973) 34 Cal.App.3d 685, 689 [110 Cal.Rptr. 319]; *State Comp. Ins. Fund v. Industrial Acc. Com. (Verden)* (1965) 30 Cal.Comp.Cases 132, 134.)

Further, failure by the employer to comply with the applicable WCAB procedures may unfairly delay receipt by the injured worker of additional workers' compensation benefits and his return to employment.

When the injured worker, who is unaware that the employer's physician has declared him permanent and stationary or able to return to work, continues to receive temporary disability payments, he is obviously not cognizant that he should attempt to seek employment. Not only would there be the lost permanent disability indemnity if the overpayment credit were allowed, but unknown loss of employment opportunities and lost wages (perhaps substantially in excess of disability benefits). Also, an injured worker on a continuing award of temporary disability may need vocational rehabilitation. But when the employer fails promptly to serve medical reports which indicate a need for consideration of vocational rehabilitation, a delay in the injured worker's receipt of these benefits would result, thereby causing a delay in the injured worker's commencement of an actual retraining program and his eventual return as a productive member of the labor market.

When, as here, a physician renders an opinion that the applicant "could be considered permanent and stationary at this time," applicant's doctor might recommend further medical or surgical procedures at that time.[9] However, if notice of that opinion is unduly delayed, any further attempt at treatment might be lost.

In the opinion of this court, an unreasonable delay in the filing of a medical report terminating benefits conflicts with the applicant's rights as set forth herein, and constitutes a sufficient detriment or prejudice to support estoppel.

Equitable principles, including estoppel, have been frequently applied in workers' compensation proceedings. (See, e.g., *Reynolds* v. *Work-*

---

[9]It is noted that in his report of November 1, 1978, Dr. Abramson still said Maples was permanent and stationary if no further treatment were rendered.

*men's Comp. Appeals Bd.* (1974) 12 Cal.3d 726, 729-730 [117 Cal. Rptr. 79, 527 P.2d 631]; *McCarty v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 677, 684-685 [117 Cal.Rptr. 65, 527 P.2d 617]; *Granco Steel, Inc. v. Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 191, 199-205 [65 Cal.Rptr. 287, 436 P.2d 287]; *Benner v. Industrial Acc. Com.* (1945) 26 Cal.2d 346, 349-350 [159 P.2d 24]; *Bankers Indem. Ins. Co. v. Indus. Acc. Com.* (1935) 4 Cal.2d 89 [47 P.2d 719]; *Hurwitz v. Workers' Comp. Appeals Bd.* (1979) 97 Cal.App.3d 854 [158 Cal.Rptr. 914]; *Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd. (Kause)* (1979) 91 Cal.App.3d 507, 510-511 [154 Cal. Rptr. 768]; *Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd. (California School for the Deaf)* (1978) 83 Cal.App.3d 413, 417-418 [148 Cal.Rptr. 54]; *Nolan v. Workers' Comp. Appeals Bd.* (1977) 70 Cal.App.3d 122, 129-130 [138 Cal.Rptr. 561]; *Buena Ventura Gardens v. Workers' Comp. Appeals Bd.* (1975) 49 Cal.App.3d 410 [122 Cal.Rptr. 714]; *Ryerson Concrete Co. v. Workmen's Comp. Appeals Bd., supra,* 34 Cal.App.3d at p. 689; *Shope v. Workmen's Comp. Appeals Bd.* (1971) 21 Cal.App.3d 774 [98 Cal.Rptr. 768]; *Industrial Indem. Co. v. Industrial Acc. Com. (Endicott)* (1960) 178 Cal.App.2d 422 [2 Cal.Rptr. 876]; *Industrial Indem. Co. v. Ind. Acc. Com. (Varela)* (1953) 115 Cal.App.2d 684, 689-690 [252 P.2d 649]; *Eagle Indem. Co. v. Industrial Acc. Com.* (1949) 92 Cal.App.2d 222 [206 P.2d 877].)

Failure of the employer or his carrier to comply with statutory provisions and administrative regulations to notify the injured employee of his workers' compensation rights can result in the employer being estopped to plead the statute of limitations. (*Reynolds v. Workmen's Comp. Appeals Bd., supra,* 12 Cal.3d 726; *Hurwitz v. Workers' Comp. Appeals Bd., supra,* 97 Cal.App.3d 854; *Buena Ventura Gardens v. Workers' Comp. Appeals Bd., supra,* 49 Cal.App.3d 410.) We are of the opinion that estoppel should similarly apply to the situation herein. Eldorado's failure to comply with statutory and administrative provisions should not prejudice Maples when he received indemnity in good faith with no wrong doing on his part.[10] (See *Ryerson Concrete Co. v. Workmen's Comp. Appeals Bd., supra,* 34 Cal.App.3d at p. 689; *State Comp. Ins. Fund v. Industrial Acc. Com. (Verden), supra,* 30 Cal. Comp.Cases 132.)

---

[10]There is no contention that Maples was working while receiving temporary disability indemnity.

■ The prerequisites to the applicability of the doctrine of equitable estoppel are that the party asserting the estoppel must have been ignorant of the true facts and must have relied upon the words or conduct of the adverse party to his detriment. (*Hurwitz, supra*, 97 Cal.App.3d at pp. 874-875.)

■ Eldorado had the burden of proof on the issue of termination of temporary disability pursuant to Labor Code section 4651.1, which sets forth a rebuttable presumption that temporary disability continued for at least one week following the date of filing of the petition to terminate. (*Huston* v. *Workers' Comp. Appeals Bd., supra*, 95 Cal.App.3d at pp. 869-870.)[11]

Maples here received temporary disability until August 9, 1978. He received the indemnity unaware of Dr. Crandall having declared him permanent and stationary in his report of November 14, 1977. The first notification to Maples, of Dr. Crandall's opinion of his condition, was receipt of Dr. Crandall's report of September 7, 1978.[12] Estoppel precludes Eldorado from claiming that temporary disability ended prior to September 7, 1978.

Dr. Crandall's report of September 7, 1978, was apparently not received by applicant's attorney until September 22, 1978. It is not the intention of this court to penalize the employer for delay in serving medical reports which do not terminate or affect benefits being provided to the applicant, nor is it our intention to penalize the employer for reasonable delay in serving medical reports which terminate benefits. Thus, temporary disability was not extended to the time that the

---

[11]We are not asked to decide whether the termination of temporary disability indemnity under a continuing award without compliance with statutory and administrative provisions may be the basis for a 10 percent penalty under Labor Code section 5814 on *temporary disability*.

[12]Here, Maples was represented by counsel experienced in workers' compensation proceedings and was therefore well aware of the significance of Dr. Crandall's report of September 7, 1978. However, if Maples had been unrepresented by legal counsel, he would not be *presumed* to understand the importance of this report.

The knowledge of Dr. Crandall's November 1977 report subsequent to his report of September 7, 1978, is also demonstrated by the fact Dr. Abramson states in his report dated November 1, 1978, that he had a copy of Dr. Crandall's November 14, 1977, report. If Eldorado had suspicion that Maples actually had knowledge of Dr. Crandall's report of November 14, 1977, before service of Dr. Crandall's report of September 7, 1978, that was a matter for Eldorado to develop by evidence before the Board. This court can only interpret the present record to show Maples first had knowledge as of the service of Dr. Crandall's report dated September 7, 1978.

September 7, 1978, report was actually received by applicant's counsel. However, estoppel will lie when the employer unreasonably delays the filing of a medical report which terminates benefits. The test of reasonableness must be based on the facts of each case. Clearly, a 10-month delay of notice from Eldorado to applicant that Dr. Crandall believed his condition to be permanent and stationary was unreasonable. Accordingly, there is no overpayment of temporary disability indemnity.

The Board's decision finding Maples' temporary disability terminated on November 14, 1977, is annulled. The matter is remanded to the Board with directions to hold Eldorado was estopped to deny temporary disability terminated prior to September 7, 1978, to amend the award accordingly, and to conduct such further proceedings as are necessary to that end.

Files, P. J., and Kingsley, J., concurred.