[No. C059760. Third Dist. July 7, 2009.]

J.C. PENNEY COMPANY et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and JAMES
EDWARDS, Respondents.

**COUNSEL**

Mullen & Filippi and Gregory T. Jones for Petitioners.

Neil P. Sullivan for Respondent Workers' Compensation Appeals Board.

Metzinger and Associates and Ronald M. Metzinger for Respondent James Edwards.

**OPINION**

**BUTZ, J.**—Petitioners J.C. Penney Company and its insurer American Home Assurance Company, adjusted by AIG Claim Services (collectively J.C.

Penney), contend that respondent the Workers' Compensation Appeals Board (WCAB) erred in limiting a credit for overpayment of temporary disability indemnity. Entitlement to temporary disability indemnity ends when the condition of the injured worker becomes permanent and stationary. J.C. Penney sought the credit against the permanent disability indemnity award of injured worker respondent James Edwards. J.C. Penney claimed that his condition became permanent and stationary some 19 months before it stopped paying temporary disability indemnity.

The WCAB limited the requested credit on the ground that J.C. Penney failed to object, under Labor Code section 4062,[1] to the ongoing determinations of Edwards's treating physicians that he remained temporarily totally disabled. J.C. Penney argues that the WCAB erred because the treating physicians' determinations were based on an incorrect legal theory and do not afford substantial evidence of ongoing temporary disability. The argument is unpersuasive, but the WCAB's rationale does not support the amount of the limitation of the credit. We shall annul the award and remand for further proceedings to determine the appropriate credit.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 23, 2003, Edwards was on a ladder painting a J.C. Penney store in Sacramento. He fell and was injured. He suffers chronic pain in his left elbow, lower back, and right knee and leg.

Edwards's treating physician after December of 2003 was Dr. Connie Kimble. She referred him to Dr. David Coward who performed knee surgery on February 9, 2005. She also referred him to Dr. Praveen Prasad, a neurosurgeon. On October 24, 2005, Dr. Prasad recommended a back fusion surgery. On December 20, 2005, the initial request for authorization of the surgery was denied in a utilization review under section 4610.

---

[1] Undesignated statutory references are to the Labor Code.

Section 4062, as applicable here, provides: "(a) If either the employee or employer objects to a medical determination made by the treating physician concerning any medical issues [with exceptions not applicable here], the objecting party shall notify the other party in writing of the objection within 20 days of receipt of the report . . . . These time limits may be extended for good cause or by mutual agreement. If the employee is represented by an attorney, a medical evaluation to determine the disputed medical issue shall be obtained as provided in Section 4062.2 [selection of agreed medical examiner], and no other medical evaluation shall be obtained . . . ."

Edwards was then referred to Dr. Laura Anderson, a neurosurgeon, for a second opinion on the surgery recommended by Dr. Prasad. On February 14, 2006, Dr. Anderson advised against the recommended fusion surgery.[2]

On April 28, 2006, Edwards again saw Dr. Kimble, who noted that his use of pain medication had increased. She reported: "Hopefully, this is short-term in that his surgery will be approved, and his pain level will be reduced." Edwards saw Dr. Kimble again on May 24, 2006. She noted for the first time in her report for this visit that he had met with Dr. Anderson who had recommended against the fusion surgery. Dr. Kimble recommended an evaluation for an implanted pump to deliver pain medicine to the spinal cord. Her progress report asserts that Edwards remains: "Temporarily totally disabled through June 2006." There are no subsequent progress reports from treating physicians in the record until April of 2007.

At some point prior to February 5, 2007, the parties apparently agreed to a medical examination (see § 4062.2)[3] by Dr. Peter Mandell concerning contested medical issues. On that date Dr. Mandell examined Edwards and prepared an evaluation report. In pertinent part, Dr. Mandell opined that Edwards's condition was permanent and stationary and "probably became so six months after a RIGHT knee arthroscopy which he had on 2/9/05."

Edwards had been receiving temporary disability indemnity payments from the time of his injury. These payments ended March 14, 2007.

Edwards's case came on for hearing before a workers' compensation administrative law judge (ALJ) on January 22, 2008. Edwards testified concerning his medical history and the nature of his current condition. No inquiry was made about the decision on back surgery or the claimed overpayment.

The ALJ rendered a decision and award on April 18, 2008. He found that the date Edwards's medical condition became permanent and stationary was the day he was examined by Dr. Mandell, reasoning as follows:

"Applicant had been evaluated by Dr. Mandell as an agreed medical examiner February 5, 2007. As noted, Dr. Mandell felt that he was permanent and stationary . . . .

"An injured worker is entitled to temporary disability indemnity while he is in his healing period. (*Bstandig v. WCAB* (1977) 42 [Cal.Comp.Cases] 114,

---

[2] She did opine that an alternative decompression surgery would be appropriate "if the patient at some point decides that the right leg is disabling."

[3] There is no documentary evidence in the record of the request for this medical evaluation.

118 [68 Cal.App.3d 988, 137 Cal.Rptr. 713].) Applicant was clearly in his healing period while he was awaiting authorization for surgery proposed by Dr. Prasad. After that surgery was not authorized, Dr. Kimble indicated on a recurring basis that he continued to be temporarily disabled . . . .

"If [J.C. Penney] disputed [Edwards's] temporary disability status at any time, it could have objected to Dr. Kimble's findings under Labor Code [section] 4062. Although I can reasonably infer there was an objection at some point in time and that Dr. Mandell was agreed upon to resolve that issue (and, apparently, other issues) it is contrary to the spirit of [section] 4062 to permit a retrospective determination of a permanent and stationary date when there was substantial evidence to support ongoing temporary disability.

"Based on the record presented to me Dr. Mandell's implied opinion that [Edwards] was permanent and stationary the date he saw him supports a determination that temporary disability ceased at that time, but not earlier."

In an amended award and order of April 30, 2008, the ALJ found that there had been an overpayment of temporary disability indemnity for the period from "February 6, 2007, through March 14, 2007."

J.C. Penney filed a petition for reconsideration on May 16, 2008. J.C. Penney contended that there was no substantial evidence to support the finding that Edwards's medical condition achieved permanent and stationary status on the date he was examined by Dr. Mandell. J.C. Penney argued the only evidence on permanent and stationary status was Dr. Mandell's opinion that the date was August 9, 2005. J.C. Penney made no mention of the remarks of the ALJ about "the spirit of [section] 4062."

The WCAB, in pertinent part, affirmed the award and order, adopting and incorporating the reasoning of the ALJ as related above. J.C. Penney filed its petition for writ of review and we issued the writ on October 16, 2008.

## DISCUSSION

### I. Section 4062 Bars Part of the Overpayment Credit J.C. Penney Sought

Neither J.C. Penney nor Edwards in their initial memoranda in this court addressed the reasoning that retrospective determination of a permanent and stationary date would be inconsistent with "the spirit of section 4062." We asked them to address this in supplemental briefs.

J.C. Penney contends that the WCAB erred in basing denial of the requested credit on failure to object under section 4062. J.C. Penney notes that the ALJ's remarks about section 4062 barring a retrospective determination of a permanent and stationary date included the phrase "when there [i]s substantial evidence to support ongoing temporary disability." J.C. Penney argues that the award cannot be upheld under this logic because Dr. Kimble's ongoing findings do not constitute "substantial evidence to support ongoing temporary disability."

■ However, the denial of the credit under section 4062 does not require a finding of substantial evidence of ongoing temporary disability and the WCAB did not err in basing a denial of the requested credit on that statute.

■ The statutory duty to pay temporary disability compensation continues during the period in which an injured worker, while unable to work, is undergoing medical diagnostic procedure and treatment for an industrial injury. (*Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 168 [193 Cal.Rptr. 157, 666 P.2d 14].) The duty ends when the worker is able to return to work or when his or her medical condition becomes permanent and stationary. (E.g., *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1291–1292 [135 Cal.Rptr.2d 665, 70 P.3d 1076].) "A disability is considered permanent when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment." (Cal. Code Regs., tit. 8, § 10152; see *id.*, § 9785, subd. (a)(8).) This is so even though further medical treatment may be required to relieve the effects of the injury. (See, e.g., 2 Witkin, Summary of Cal. Law (10th ed. 2005) Workers' Compensation, § 287, pp. 895–897.) Thus, "temporarily disabled" and "permanent and stationary" are contradictory propositions.

Edwards's condition became permanent and stationary when it was unlikely to change substantially in the next year with or without medical treatment, even though he continued to require medical treatments to alleviate pain caused by his industrial accident. Accordingly, a medical opinion that he continued to be temporarily totally disabled would be legally untenable unless there was evidence showing some likelihood of substantial change in his condition within the year, e.g., through medical treatment such as back

surgery. The medical determination by Dr. Kimble that Edwards was temporarily totally disabled, i.e., his condition was not yet permanent and stationary, is not substantial evidence of ongoing temporary disability without a foundation of some likelihood of substantial change in the ensuing year.[4]

However, the WCAB's denial of the credit under section 4062 does not rest on a finding that Dr. Kimble's opinion of ongoing temporary total disability is substantial evidence that Edwards's condition was not yet permanent and stationary. If that were the import of the WCAB's reasoning, no purpose would be served by the reference to section 4062. The ALJ would have found ongoing temporary disability directly, based on Dr. Kimble's opinion.

It is only because Dr. Mandell's reasoning rebutted the apparent view of Dr. Kimble, that treatment to manage pain alone sufficed to warrant temporary disability, that there was any occasion to invoke "the spirit of section 4062." The WCAB's decision to deny a full credit for overpayment necessarily rests on the theory that the policy of section 4062 bars recovery of an overpayment, rather than a theory that there was no overpayment. The ALJ's remark "when there [i]s substantial evidence to support ongoing temporary disability" is superfluous, but "[s]uperfluity does not vitiate" (Civ. Code, § 3537).

The rationale of the award turns on public policy manifest in section 4062. The statute provides, in pertinent part, "If [the] employer objects to a medical determination made by the treating physician concerning any medical issue . . . , the objecting party shall notify the other party in writing of the objection within 20 days of receipt of the report if the employee is represented by an attorney . . . . These time limits may be extended for good cause or by mutual agreement." (§ 4062, subd. (a).)

■ A determination by a treating physician that an injured worker continues to be temporarily totally disabled is a medical determination subject to the objection requirement of Labor Code section 4062. (See Cal. Code

---

[4] J.C. Penney's argument and Dr. Mandell's report assume that permanent and stationary status was reached when Edwards had recovered from his knee surgery, because, as it turns out, authorization for back surgery was denied. However, this retrospective view fails to note that, while the possible back surgery was in dispute, Edwards was undergoing medical diagnostic procedures. Thus his condition could be determined not yet to be permanent and stationary, until further back surgery was ruled out. (See, e.g., *Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd., supra,* 34 Cal.3d at p. 168; 1 St. Clair et al., Cal. Workers' Compensation Law and Practice (Dec. 2008 supp.) Temporary Disability, § 7:41, pp. 7-17 to 7-18.)

Regs., tit. 8, § 9785.)[5] The question is: What is the effect of failing to object within the "time limits" of that statute?

 The requirement for an objection under section 4062 is stated in mandatory language: "the objecting party shall notify the other party in writing . . . ." The ordinary meaning of a mandatory time limit is that once the prescribed time has passed the action subject to the time limit may no longer be taken. When J.C. Penney failed to object to a medical determination of temporary total disability by Edwards's treating physician within the time limit provided in section 4062, it lost the right to object to that determination in the future.

The evident purpose of the time limits in section 4062 is to induce both employer and employee to declare promptly medical determination disputes and expeditiously resolve them through the prescribed mechanisms. This purpose cannot be attained if a party such as J.C. Penney can fail to object in a timely manner and nonetheless thereafter tender a claim that contradicts a medical determination subject to the objection requirement of the statute. If either employer or employee fails to raise a dispute about a medical determination within the ambit of section 4062 within the prescribed time, they may not attack that determination thereafter.

 Section 4062 permits extension of the time periods "for good cause." (§ 4062, subd. (a).) However, J.C. Penney offered no claim of good cause for failure to object in the WCAB proceedings. We will not speculate about the nature of good cause in the abstract. It suffices to say that ignorance of a legal theory of rebuttal of a medical determination is not good cause for failure to object. If that were allowed, the exception would swallow the rule.

---

[5] California Code of Regulations, title 8, section 9785 addresses the reporting duties of the primary treating physician and contains the following pertinent definitions:

"(a) For the purposes of this section, the following definitions apply:

"(1) The 'primary treating physician' is the physician who is primarily responsible for managing the care of an employee, and who has examined the employee at least once for the purpose of rendering or prescribing treatment and has monitored the effect of the treatment thereafter . . . . [¶] . . . [¶]

"(4) 'Medical determination' means, for the purpose of this section, a decision made by the primary treating physician regarding any and all medical issues necessary to determine the employee's eligibility for compensation. Such issues include but are not limited to the scope and extent of an employee's continuing medical treatment, the decision whether to release the employee from care, the point in time at which the employee has reached permanent and stationary status, and the necessity for future medical treatment. [¶] . . . [¶]

"(g) When the primary treating physician determines that the employee's condition is permanent and stationary, the physician shall, unless good cause is shown, report within 20 days from the date of examination any findings concerning the existence and extent of permanent impairment and limitations and any need for continuing and/or future medical care resulting from the injury . . . ."

■ We find the core reasoning of the WCAB correct. "[I]t is contrary to the spirit of [section] 4062 to permit a retrospective determination of a permanent and stationary date" when to do so would be to allow a belated objection to a medical determination by the treating physician.

However, that does not justify extending the permanent and stationary date until the time that the agreed medical examiner rendered an opinion that the worker's condition was permanent and stationary. The limitation under section 4062 is to contradiction of the unchallenged medical determination of the treating physician. The last such determination before the agreed medical examiner process was invoked is Dr. Kimble's report that Edwards was "[t]emporarily totally disabled through June 2006." Accordingly, the reach of the statute extends only that far. Insofar as the denial of J.C. Penney's requested credit is predicated on section 4062, it cannot be justified beyond that point on this record.

## II. The Record Does Not Support an Equitable Bar to the Overpayment Credit

Edwards contends that an award denying any credit for overpayments made prior to Dr. Mandell's finding on February 5, 2007, should be upheld on an estoppel rationale discussed in *Maples v. Workers' Comp. Appeals Bd.* (1980) 111 Cal.App.3d 827 [168 Cal.Rptr. 884] (*Maples*). J.C. Penney replies that the factual record in this case does not support an estoppel. J.C. Penney has the more persuasive position.

In *Maples* the court held that the WCAB erred in permitting the insurance carrier for the employer to claim an overpayment of temporary disability indemnity payments against petitioner's permanent disability award. (*Maples, supra,* 111 Cal.App.3d at pp. 829–830.) The carrier had received a medical evaluation opinion in November of 1977 that found the employee to be permanent and stationary. (*Id.* at p. 830.) However, the first notice the carrier gave the employee of the opinion was in a supplemental medical report from the same doctor, filed and served in September 1978, reaffirming the permanent and stationary status opinion as of the date of the prior examination and report. (*Ibid.*) The carrier stopped paying temporary disability indemnity as of August 9, 1978, but did not immediately advise the employee of the reason for the termination. (*Maples,* at pp. 830–831.)

The *Maples* opinion held the carrier estopped, as a matter of law, from claiming that temporary disability ended prior to the employee's receipt of the report containing the opinion his condition was permanent and stationary. (*Maples, supra,* 111 Cal.App.3d at p. 839.) The opinion notes that the carrier

had violated provisions of the Labor Code and WCAB rules in failing to timely file with the appeals board and serve on the employee the original medical report and in failing to file a petition to terminate temporary disability indemnity within 10 days of the cessation of payments. (*Id.* at pp. 834–835.) The full disclosure of medical reports as required by WCAB rules is essential to the expeditious determination of the controversies submitted to the appeals board and failure to disclose is prejudicial to the injured worker. This prejudice is, inter alia, that the allowance of credit for a temporary disability overpayment can be disruptive of the purpose of permanent disability indemnity, delay receipt by the injured worker of additional workers' compensation benefits and his return to employment, and prevent the worker's doctor from recommending further medical or surgical procedures. (*Id.* at pp. 836–837.)

■ J.C. Penney correctly argues that the *Maples* estoppel theory is inapplicable. Estoppel requires, inter alia, a false representation or concealment of material facts made with knowledge of the facts. (See, e.g., 13 Witkin, Summary of Cal. Law, *supra*, Equity, § 191, pp. 527–528.) In *Maples* the employer was aware of and improperly suppressed a medical evaluation opinion that the employee was permanent and stationary. However, there is no evidence in this case that J.C. Penney was actually aware, or was even in a superior position to have known, that Edwards's condition had become permanent and stationary before Dr. Mandell's report.

Estoppel is not the only equitable principle the WCAB may use in the exercise of discretion to deny a credit. (See *Maples, supra,* 111 Cal.App.3d at pp. 837–838.) The WCAB generally has some degree of discretion to grant or deny credit for overpayments under section 4909.[6] (See, e.g., *Genlyte Group, LLC v. Workers' Comp. Appeals Bd.* (2008) 158 Cal.App.4th 705, 724 [69 Cal.Rptr.3d 903]; *Herrera v. Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 254, 258 [78 Cal.Rptr. 497, 455 P.2d 425].) However, we cannot sustain the denial of a credit beyond the limit based on section 4062 on equitable grounds. The only ground asserted in the WCAB award is section 4062. The WCAB did not otherwise assess the relative equities in either recognizing or denying full or partial credit.

---

[6] Section 4909 provides: "Any payment, allowance, or benefit received by the injured employee during the period of his incapacity, or by his dependents in the event of his death, which by the terms of this division was not then due and payable or when there is any dispute or question concerning the right to compensation, shall not, in the absence of any agreement, be an admission of liability for compensation on the part of the employer, but any such payment, allowance, or benefit may be taken into account by the appeals board in fixing the amount of the compensation to be paid. The acceptance of any such payment, allowance, or benefit shall not operate as a waiver of any right or claim which the employee or his dependents has against the employer."

## DISPOSITION

The decision and award of the WCAB is annulled and the matter remanded for further proceedings to determine the amount of the credit to J.C. Penney for overpayment of temporary disability indemnity in accord with the views expressed in this opinion. The parties are to bear their own costs before this court. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

Nicholson, Acting P. J., and Hull, J., concurred.

The petition of respondent James Edwards for review by the Supreme Court was denied October 14, 2009, S174615.